IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PAC-WEST DISTRIB. NV LLC,** : | | |
| *Plaintiff* : | | **CIVIL ACTION** |
| : | | |
| **v.** : | | |
| : | | |
| **AFAB INDUS. SERV., INC**, *et al.*, : | | **No. 19-3584** |
| *Defendants* : | | |

## MEMORANDUM

PRATTER, J.                                                                                                                              AUGUST 4, 2020

### INTRODUCTION

The parties in this action, sellers and distributors of various cleaning products, have asserted many claims against each other over the years through various lawsuits. In this case, Pac-West Distributing NV LLC alleges, in pertinent part, that AFAB Industrial Services, Inc. and Everett Farr, III, as a corporate agent of AFAB,[1] infringed upon its trademarks and trade dresses, breached a settlement agreement entered into by the parties, and tortiously interfered with its current and prospective contractual relations. AFAB moves under Rule 12(b)(6) to dismiss some of Pac-West's claims and to consolidate this action with a separate action that AFAB brought against Pac-West six months before this action commenced. AFAB argues that many of Pac-West's claims are precluded by the parties' prior settlement agreement, that Pac-West cannot bring claims invoking its various registrations because its products are actually used for an unlawful purpose, and that Pac-West fails to state claims for breach of contract or tortious interference with current or prospective contractual relations.

---

[1]    For the sake of conciseness, the Court refers to the defendants collectively as "AFAB."

1

For the reasons that follow, the Court denies the motion to dismiss and motion to consolidate, but permits AFAB an additional opportunity to meet its burden for establishing that the settlement agreement precludes Pac-West's claims related to its trademarks and trade dresses.

## BACKGROUND

### I. Prior Litigation and Settlement Agreement

In 2015, AFAB brought suit in this district against Pac-West in a case captioned *Farr, et al. v. Pac-West Distrib. NV LLC., et al.*, No. 16-175, for common law defamation, tortious interference with prospective business relations, and unfair competition. That same year, AFAB also filed a petition to cancel Pac-West's registrations for its RUSH, PWD, and POWER PAK PELLET marks and notices of opposition to Pac-West's applications for NEVER FAKE IT! and SUPER RUSH.

In the federal litigation, Pac-West counterclaimed against AFAB for defamation, false advertisement, trade dress infringement, false designation of origin, and common law unfair competition. Pac-West based its counterclaims on AFAB's alleged infringement of trademarks and trade dresses associated with the RUSH, PWD, SUPER RUSH, POWER-PAK PELLET, and the unregistered NEVER FAKE IT! marks. On August 23, 2016, the parties entered into a settlement agreement that dismissed the litigation with prejudice and resolved the petition to cancel and notices of opposition AFAB filed challenging Pac-West's trademarks.

In pertinent part, the settlement agreement contains the following provisions:

> 2.2   AFAB/Farr agree never to challenge or take any action to interfere with or prevent Pac-West and Taylor's use, application and/or registration of the marks RUSH, PWD, SUPER RUSH, POWER-PAK PELLET, NEVER FAKE IT! (provided that any new applications for such marks do not otherwise infringe upon rights AFAB/Farr may own in other marks). . . .
>
> 2.3   AFAB will continue to identify the AFAB company name and "Bensalem, PA" on its packaging for any product offering that

2

> bear the RUSH, PWD, SUPER RUSH, POWER-PAK PELLET, or NEVER FAKE IT WITHOUT IT!, so that it is understood that these goods are being offered by AFAB (as opposed to an unrelated third party). . . .
>
> 3.1   Pac-West/[Trent] Taylor[2] covenant not to sue (or send demand letters) to Farr or AFAB for any use of RUSH, PWD, SUPER RUSH, POWER PAK PELLET, and NEVER FAKE IT WITHOUT IT! for the goods AFAB is currently offering under those marks. . . .
>
> 4.1   Subject to the terms of this Agreement, Pac-West/Taylor hereby release and forever discharge AFAB/Farr and any related companies, officers, directors, affiliates, predecessors, successors, assigns, employees, licensees, retailers, distributors, insurers and agents for any and all causes of action, claims, attorney's fees, costs, damages, and liabilities, at law or in equity, known or unknown, arising out of or related to the Actions.[3]

Settlement Agreement at §§ 2.2, 2.3, 3.1, 3.1 (Case No. 19-3584, Doc. No. 22-1).

**II.**   ***AFAB Indus. Serv., Inc. v. Pac-West Distrib. NV LLC, et al.*, No. 19-566**

In February 2019, AFAB sued Pac-West and Trent Taylor alleging breach of the settlement agreement,[4] unfair competition and false advertising under the Lanham Act, and common law unfair competition. The basis of AFAB's amended complaint is that the use of certain marketing claims on Pac-West's website imply that AFAB's products are counterfeit and pirated, despite the settlement agreement setting forth that AFAB could continue to sell such products. According to AFAB, "Defendants' Website [www.neverfakeit.com] contained and continues to contain additional statements which indicate that only Defendants' Products can legally use the PWD,

---

[2]   According to the amended complaint filed in *AFAB Indus. Serv., Inc. v. Pac-West Distrib. NV LLC, et al.*, No. 19-566, Mr. Trent is an officer, director, and/or manager of Pac-West.

[3]   The "Actions" are defined as the federal litigation commenced in 2015; AFAB's petition to cancel Pac-West's registrations for the marks RUSH, PWD, and POWER PAK PELLET; and AFAB's notices of opposition to Pac-West's applications for NEVER FAKE IT! and SUPER RUSH.

[4]   AFAB alleges that Pac-West breached § 6.2 of the settlement agreement, which provides: "The Parties agree not to publicly disparage or malign each other in connection with the Actions or the subject matter of this Agreement." Settlement Agreement at § 6.2 (Case No. 19-3584, Doc. No. 22-1).

RUSH, SUPER RUSH, and POWER PAK PELLET trademarks and that <u>only</u> Defendants' Products containing such trademarks are authentic, genuine, and/or legal." Am. Compl. at ¶ 22 (Case No. 19-566, Doc. No. 40) (emphasis in original). AFAB avers that these statements disparage its products.

### III.   The Present Litigation

Pac-West brought this action against AFAB and Mr. Farr in August 2019. According to the amended complaint, Pac-West owns various trademarks for its cleaning products, nail polish removers, incense, desiccants, and other related products. Pac-West alleges that AFAB has "purposefully advertised, promoted, offered for sale, sold, distributed and continue to advertise, promote, offer for sale, sell and distribute" products that infringe on Pac-West's IRON HORSE, RUSH ORIGINAL, and GOLD RUSH marks[5] as well as various trade dresses associated with its products bearing the IRON HORSE, RUSH ORIGINAL, GOLD RUSH, SUPER RUSH, RUSH, and NEVER FAKE IT! Marks.[6] Am. Compl. at ¶ 34 (Case No., 19-3584, Doc. No. 11). Concerning the latter, Pac-West alleges that AFAB's products mimic the color combinations; images; the position, format, size, and content of text; its "clutter free overall layout", *id.* at ¶ 39(g); and bottle shapes found on various Pac-West products. Pac-West asserts that AFAB made these changes to its product labels and packaging after the parties entered into the settlement agreement.

---

[5]   Pac-West references AFAB's alleged infringement of Pac-West's IRON HORSE, RUSH ORIGINAL, and GOLD RUSH marks to support its Lanham Act and common law trademark infringement, trademark counterfeiting, false designation of origin, common law unfair competition, and common law unjust enrichment claims, which comprise Counts Two through Seven of the amended complaint.

[6]   Although Pac-West references trade dresses associated with other marks in the amended complaint, *see* Am. Compl. at ¶ 14 (Doc. No. 11), Pac-West alleges that AFAB has copied trade dresses associated with only these enumerated marks, *Id.* at ¶¶ 4 n.2; 21. Pac-West references AFAB's alleged infringement of Pac-West's various trade dresses to support its trade dress infringement, false designation of origin, common law unfair competition, and common law unjust enrichment claims, which comprise Counts One, Four, Six, and Seven of the amended complaint.

Next, Pac-West alleges that AFAB breached the settlement agreement by failing to identify its address and corporate name on the packaging of products bearing RUSH, PWD, SUPER RUSH, POWER-PAK PELLET, and NEVER FAKE IT! marks.

Finally, in advancing its tortious interference claims, Pac-West asserts that "verbal agreements" existed between Pac-West and unidentified "third-party retailers" for the use, purchase, and sale of Pac-West's goods and marketing materials. *Id.* at ¶ 139. Pac-West asserts that AFAB undercut these agreements by selling its products to the third-party retailers "at lower prices" as a means to aid, abet, and encourage the retailers to sell counterfeit Pac-West products. *Id.* at ¶ 140.[7]

The Court heard oral argument on the motions to dismiss filed in both the present action and *AFAB Indus. Serv., Inc. v. Pac-West Distrib. NV LLC, et al.*, No. 19-566.[8]

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

---

[7]  AFAB does not move to dismiss Pac-West's claims alleging AFAB's violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count Nine) or role in a civil conspiracy (Count Twelve).

[8]  At oral argument, the parties assured the Court that they were interested in a referral to Magistrate Judge Timothy Rice to engage in settlement proceedings. Accordingly, the Court referred the cases and stayed all deadlines and activities in both actions. However, the Court recently discovered that settlement efforts between the parties have been deemed futile. Accordingly, the scheduled settlement conference was cancelled and an amended scheduling order was issued. The delay in the issuance of this Memorandum is due to the parties' failure to follow through on their representations to the Court concerning their interest in pursuing settlement.

will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original).  To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and quotations omitted).  In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters.  For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)").  Also, the Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth. of N. Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or discount reality.  The Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions") (citations omitted).  If a claim "is

vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

## DISCUSSION

### I.   AFAB's Motion to Dismiss

AFAB raises a litany of reasons for dismissing the majority of the counts brought against it.  The Court addresses each below.

#### A. Whether the Settlement Agreement Bars Pac-West from Bringing Counts One Through Eight

AFAB argues that Counts One through Eight are barred pursuant to claim preclusion.  A claim preclusion defense can be raised and adjudicated at the motion to dismiss stage, and the Court may "take notice of all facts necessary for the decision." *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008).  The party asserting the bar to claims bears the burden of showing that claim preclusion applies.  *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984).

Claim preclusion, a form of res judicata, bars the "relitigation of identical cases[.]" *Sec'y U.S. Dep't of Labor v. Kwasny*, 853 F.3d 87, 94 (3d Cir. 2017).  A party seeking to invoke claim preclusion must establish three elements: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Duhaney v. Att'y Gen.*, 621 F.3d 340, 347 (3d Cir. 2010) (quoting *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)).  "Judicially approved settlement agreements are considered final judgments on the merits for the purposes of claim preclusion." *Toscano*, 288 F. App'x at 38 (citing *Langton v. Hogan*, 71 F.3d 930, 935 (1st Cir. 1995)).  Claim preclusion "does not bar claims that are predicated on events that postdate the filing of the initial complaint[.]" *Morgan v. Covington*

*Twp.*, 648 F.3d 172, 178 (3d Cir. 2011) (citing *Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008) ("Res judicata does not bar a suit based on claims that accrue after a previous suit was filed . . . [i]t does not matter whether . . . the unlawful conduct is a practice, repetitive by nature . . . that happens to continue after the first suit is filed, or whether it is an act, causing discrete, calculable harm, that happens to be repeated.")).

If a settlement agreement triggers a dismissal of the prior suit "'a somewhat modified form of res judicata'" applies. *Toscano*, 288 F. App'x at 38. In such a situation, "[t]he express terms of a settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a settlement." *Id.* (citing *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1291 (11th Cir. 2004) (holding that "to preclude a wider range of matters than those specified in the Agreement would frustrate the parties' expressed intent and bestow upon [the defendant] a windfall of immunity from litigation")).

As a preliminary matter, both parties at times seem to veer away from the basic concept that the terms of the settlement agreement dictate the limits of claim preclusion. The Court's determination hinges on whether the settlement agreement provisions at issue prohibit Pac-West's claims. AFAB argues that §§ 2.3, 3.1, and 4.1 of the settlement agreement bar Pac-West from bringing the trademark and trade dress claims at issue here.[9] Pursuant to § 4.1, Pac-West and Mr. Taylor "release[d] and forever discharge[ed] AFAB/FARR . . . for any and all causes of action, claims, attorney's fees, costs, damages, and liabilities . . . known or unknown, arising out of or related to the Actions." Settlement Agreement at § 4.1 (Doc. No. 22-1). Section 3.1 provides that Pac-West covenanted not to sue AFAB for "any use of RUSH, PWD, SUPER RUSH, POWER

---

[9] There are various additional provisions included in the settlement agreement. As noted, the party seeking to assert the doctrine of claim preclusion bears the burden of showing that the doctrine applies. *Athlone Indus., Inc.*, 746 F.2d at 983. Accordingly, the Court focuses only on the assertedly preclusive effect of the provisions cited by AFAB.

PAK PELLET, and NEVER FAKE IT WITHOUT IT! for the goods AFAB is currently offering under those marks." *Id.* at § 3.1.  Section 2.3 states that "AFAB will continue to identify the AFAB company name and "Bensalem, PA" on its packaging for any product offering that bear the RUSH, PWD, SUPER RUSH, POWER-PAK PELLET, NEVER FAKE IT WITHOUT IT!, so that it is understood that these goods are being offered by AFAB (as opposed to an unrelated third party)." The Court refers to §§ 2.3 and 3.1 collectively.[10]  AFAB asserts that these provisions bar Pac-West from raising any claims in the amended complaint that were raised or could have been raised in the prior litigation.

      The Court also notes the temporal considerations at issue.  Pac-West in part stresses that its allegations are based on actions that AFAB took after the parties entered into the settlement agreement, reasoning that claim preclusion typically cannot be used to bar suits based on future events.  Where the initial dispute was resolved pursuant to a settlement agreement, however, the terms of the settlement agreement govern preclusion.  Therefore, suits based on events occurring after the execution of the settlement agreement could, in theory, be precluded if the terms of the settlement agreement so decree.[11]  Even if all of the actions that form the basis for Pac-West's claims occurred after the settlement agreement went into effect, that does not end the Court's inquiry.  Rather, the Court must determine whether the language of the settlement agreement bars

---

[10] AFAB seemingly cites this provision to show that AFAB is permitted to use the RUSH, PWD, SUPER RUSH, POWER-PAK PELLET, and NEVER FAKE IT WITHOUT IT! marks, provided that it properly packages the products.  To the extent AFAB argues that this provision precludes Pac-West's claims because it has in fact properly abided by the provisions set forth in the settlement agreement, such an argument fails because it improperly asks the Court to assume that Pac-West's allegations are untrue.  Even so, because these marks are already addressed in the cited covenant not to sue provision, the Court focuses its analysis on § 3.1.

[11] *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247 (3d Cir. 2014) is instructive on this point. In *Blunt*, the appellants argued that the settlement agreement at issue could not bar claims arising after the settlement agreement's effective date.  *Id.* at 282 n. 51.  However, the release language at issue barred claims brought by future students.  The Third Circuit Court of Appeals rejected the appellants' argument, reasoning that such a prohibition necessarily barred claims arising after that settlement agreement's effective date.  *Id.*

9

suits predicated on AFAB's alleged actions taken, including any actions taken after the parties effectuated the settlement agreement.

1. Preclusion of Claims Related to Trademarks

The Court first addresses Pac-West's claims based on the infringement of its trademarks. In this action, Pac-West alleges that AFAB infringed upon its IRON HORSE (Reg. No. 5,084,852),[12] RUSH ORIGINAL (stylized mark) (Reg. No. 5,084,851), and GOLD RUSH marks (Reg. Nos. 4,925,373 and 5,217,560). The IRON HORSE and RUSH ORIGINAL marks were registered on November 22, 2016. The GOLD RUSH Reg. Nos. 4,925,373 and 5,217,560 marks were registered on March 29, 2016 and June 6, 2017, respectively. Thus, all but the GOLD RUSH Reg No. 4,925,373 mark were registered after the parties entered into their settlement agreement on August 23, 2016. None were mentioned in Pac-West's counterclaims brought in the prior litigation or its accompanying exhibits, nor are they referenced in the settlement agreement. As the settlement agreement and prior counterclaims make clear, the prior litigation concerned the alleged infringement of the RUSH, PWD, SUPER RUSH, POWER PAK PELLET, and NEVER FAKE IT WITHOUT IT! marks, not the IRON HORSE, RUSH ORIGINAL, and GOLD RUSH marks.

Because the covenant not to sue, § 3.1, only pertains to the RUSH, PWD, SUPER RUSH, POWER PAK PELLET, and NEVER FAKE IT WITHOUT IT! marks, this provision clearly does

---

[12]    AFAB insists that this IRON HORSE mark was also at issue in the prior litigation. Pac-West did attach a trademark assignment referencing the IRON HORSE mark registered under Reg. No. 4,438,442 to its counterclaims in the prior litigation. It also included in those counterclaims an image of a product bearing an IRON HORSE mark in support of its allegation that the phrase "NEVER FAKE IT!" appeared on the packaging. Although the prior counterclaims referenced the IRON HORSE Reg. No. 4,438,442 mark, Pac-West did not actually allege that AFAB infringed on an IRON HORSE mark or trade dress. Moreover, the current litigation alleges trademark infringement of the IRON HORSE Reg. No. 5,084,842 mark (which was registered after the parties entered into the settlement agreement), *not* the Reg. No. 4,438,442 mark. Therefore, the Court rejects AFAB's assertion.

not prohibit Pac-West from suing AFAB for its use of the IRON HORSE, RUSH ORIGINAL, and GOLD RUSH marks.

Concerning the release language, § 4.1, AFAB seemingly suggests that the broad language barring claims "arising out of or related to the Actions" creates an essentially impenetrable shield from any liability concerning any trademark dispute that could ever arise between the parties.[13] However, AFAB has done nothing more than conclusory assert that such broad language necessitates claim preclusion, despite the fact that the trademarks at issue in the present case were not at issue in the prior litigation. Notably, AFAB declines to offer the Court any guidance as to how the Court should interpret the broad, generic "arising out of and relating to" language used in the release provision. Without an ounce of guidance to rely upon, it is unclear how the Court could legitimately determine that AFAB met its burden in proving that the IRON HORSE, RUSH ORIGINAL, and GOLD RUSH trademark claims somehow arise out of and relate to actions concerning the RUSH, PWD, SUPER RUSH, POWER PAK PELLET, and NEVER FAKE IT WOULD IT! trademarks. The burden to demonstrate that these claims are precluded lies with AFAB, not with the Court. Because AFAB undoubtedly failed to meet its burden, the Court rejects AFAB's argument at this time.

### 2. Preclusion of Claims Related to Trade Dress

The Court next addresses whether claim preclusion bars Pac-West's claims alleging AFAB's infringement of various trade dresses. "'Trade dress has been defined as the total image or overall appearance of a product, and includes, but is not limited to, such features as size, shape, color or color combinations, texture, graphics, or even a particular sales technique.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 (3d Cir. 2014) (quoting *Rose Art Indus., Inc. v.*

---

[13] The settlement agreement does not define the phrase "arising out of or related to," so common sense interpretation of the off-used phrase will be used here.

11

*Swanson*, 235 F.3d 165, 171 (3d Cir. 2000)). Pac-West alleges that AFAB has "purposefully advertised, promoted, offered for sale, sold, distributed and continue[s] to advertise, promote, offer for sale, sell and distribute" products that infringe on various trade dresses associated with its products bearing the IRON HORSE, RUSH ORIGINAL, GOLD RUSH, SUPER RUSH, RUSH, and NEVER FAKE IT! marks. Am. Compl. at ¶ 34 (Doc. No. 11). Pac-West alleges that after the settlement agreement went into effect, AFAB made changes to its products in order to mimic the color combinations; images; the position, format, size, and content of text; its "clutter free overall layout", *id.* at ¶ 39(g); and bottle shapes found on various Pac-West products. Again, AFAB argues that §§ 3.1 and 4.1 of the settlement agreement preclude Pac-West's claims related to trade dresses.

As noted, the covenant not to sue language states that Pac-West will not sue AFAB or Mr. Farr "for any use of RUSH, PWD, SUPER RUSH, POWER PAK PELLET, and NEVER FAKE IT WITHOUT IT! for the goods AFAB is currently offering under those marks." Settlement Agreement at § 3.1 (Doc. No. 22-1). Pursuant to plain language of the provision, the covenant not to sue only pertains to AFAB's use of those *trademarks*. *Trademarks* and *trade dresses*, however, are two distinctive forms of intellectual property. Challenging the allegedly infringing use of trade dresses is distinguishable from challenging the allegedly infringing use of trademarks. Indeed, a plaintiff can challenge the use of a trade dress without ever infringing on the trademark itself. For instance, in *Duraco Prod., Inc. v. Joy Plastic Enter., Ltd.*, 40 F.3d 1431 (3d Cir. 1994), the Third Circuit Court of Appeals acknowledged that in the "leading case" on trade dress law, the Fifth Circuit Court of Appeals "held that the defendant had unfairly competed with the plaintiff by utilizing the same design and colors as the plaintiff for packaging its lawn and garden products,

even though the defendant prominently employed a different brand name." *Id.* at 1438 (citing *Chevron Chem. Co. v. Voluntary Purchasing Grps., Inc.*, 659 F.2d 695, 700-02 (5th Cir. 1981)).

As for the release provision, because products bearing the IRON HORSE, RUSH ORIGINAL, and GOLD RUSH marks were not at issue in the prior action, it remains unclear how Pac-West's current claims concerning the alleged infringement of trade dresses on products bearing these marks arise out of or relate to the prior litigation. Admittedly, because the alleged infringement of trade dresses associated with the SUPER RUSH, RUSH, and NEVER FAKE IT! marks was at issue in the prior litigation, it is more plausible that the broad release language could conceivably pertain to Pac-West's trade dress claims concerning products bearing those marks. But again, because AFAB failed to provide any meaningful insight as to why such broad release language would preclude Pac-West from bringing claims alleging infringing actions taken after the settlement agreement went into effect, the Court at this time cannot confidently determine that Pac-West's claims are precluded.

For the sake of thoroughness and because the arguments presented to the Court were so severely lacking, the Court will permit AFAB an additional opportunity to meet its burden in demonstrating the alleged preclusive effect of the settlement agreement for the claims related to trademark and trade dress infringement. To be clear, another half-hearted attempt to broadly assert the settlement agreement's preclusive effect which fails to include the detailed analysis necessary for the Court to interpret the relevant contractual language will undoubtedly prove fruitless.

      3.  Preclusion of Breach of Contract Claim

It is unclear why AFAB contends that Pac-West's breach of contract claim is apparently precluded by the settlement agreement. The settlement agreement does not contain any provisions barring the parties from enforcing the settlement agreement. Indeed, the settlement agreement

would be meaningless if it could not be enforced. To the extent AFAB's argument is predicated on its assertion that Pac-West's amended complaint fails to correctly allege the facts at issue, the Court declines the appropriateness of doubting the truthfulness of the pleadings. *See infra* discussion section I.C. Therefore, the Court rejects AFAB's assertion that Pac-West's breach of contract claim is somehow claim precluded.

### B. AFAB's Standing Argument

AFAB loosely argues that Pac-West lacks standing to support its registered marks. According to AFAB, Pac-West's registrations are not valid or legally protectable because, despite the facts alleged in the amended complaint, Pac-West's products are actually used for unlawful purposes. Although federal law bans the recreational use of isobutyl nitrites, a chemical compound found in Pac-West's products, the chemical compound may be manufactured and sold "for any commercial purpose[14] or any other purpose approved under the Federal, Drug, and Cosmetic Act." 15 U.S.C. § 2057b(b). AFAB contends that "all evidence of public record clearly establishes that [Pac-West] is marketing and selling 'poppers'[15] under its [m]arks that contain Isobutyl Nitrite." Def.s' Mem. in Supp. of Mot. to Dismiss at 20 (Doc. No. 19). AFAB's argument follows that because the protections of the Lanham Act are only afforded to the lawful use of marks in commerce, Pac-West cannot rely upon the statute's protections.

At the onset, the Court notes that it is not clear whether AFAB is referencing constitutional, statutory, or prudential standing, all of which necessitate their own respective detailed analyses. What is clear, however, is that AFAB's motion exclusively challenges Pac-West's claims pursuant

---

[14] "[T]he term 'commercial purpose' means any commercial purpose other than for the production of consumer products containing volatile alkyl nitrites that may be used for inhaling or otherwise introducing volatile alkyl nitrites into the human body for euphoric or physical effects." 15 U.S.C. § 2057b(c).

[15] "Poppers" are recreational drugs inhaled to achieve a high and said to facilitate anal intercourse.

to Rule 12(b)(6).[16]  Therefore, the Court assumes the veracity of the amended complaint's factual allegations, which aver that Pac-West is indeed using its mark for only lawful purposes.  Pursuant to the amended complaint, Pac-West uses the marks at issue in "distributing, providing, promoting and selling all-purpose cleaners, cleaning preparations, incense, desiccants, nail-polish remover, and other related products."  Am. Compl. at ¶ 2 (Doc. No. 11).

AFAB argues that because Pac-West acknowledges that its products are sold at novelty stores and are well recognized in the lesbian, gay, bisexual, transgender, and questioning (LGBTQ) community, they must be used recreationally, and are therefore rendered fraudulent and invalid.  AFAB also invites the Court to rely on notifications from the Australian and Canadian governments[17] and three registration applications that Pac-West abandoned.[18]  Pac-West contends that the Court should not consider these documents at this time, and, even if the Court were to consider them, they cannot overcome Pac-West's position that its products are solely used for commercial purposes.

At this time, the Court will not doubt the facts as represented in the amended complaint.  Moreover, the Court certainly refrains from speculating as to the legality of Pac-West's products based on AFAB's presented submissions and inferences.  Therefore, the Court rejects AFAB's standing argument.

---

[16]     AFAB does not cite Rule 12(b)(1) in its briefing.

[17]     These notifications report that some Australian and Canadian retail stores sold products allegedly bearing Pac-West's marks that were apparently inhaled or ingested.  In the amended complaint, Pac-West asserts that it only sells products in the United States.

[18]     AFAB contends that the Court can infer that Pac-West's registration marks were fraudulently procured because Pac-West decided not to move forward with three trademark applications after the U.S. Patent and Trademark Office sought confirmation that the goods identified were in compliance with the federal drug ban.

**C. Breach of Contract Claim**

In its breach of contract claim, Pac-West alleges that AFAB breached § 2.3 of the settlement agreement.[19] Pursuant to § 2.3 of the settlement agreement, AFAB agreed to continue to identify the AFAB company name and 'Bensalem, PA' on its packaging for any product offering that bear the RUSH, PWD, SUPER RUSH, POWER-PAK PELLET, NEVER FAKE IT WITHOUT IT!, so that it is understood that these goods are being offered by AFAB[.]" Settlement Agreement at § 2.3 (Doc. No. 22-1). Pac-West alleges that AFAB breached its contractual duty by failing to identify the AFAB company name or AFAB's corporate address on its products and/or product labels.

In its motion, AFAB insists that Pac-West's breach of contract claim is really based on Pac-West's "mistaken belief" that AFAB breached the settlement agreement. Def.s' Mem. in Supp. of Mot. to Dismiss at 22 (Doc. No. 19). Referencing a photograph that it submitted with its motion, AFAB argues that it actually properly labeled its products with its fictitious company name, 'I.C.E." Pac-West responds that the photograph is unauthenticated, should not be considered when ruling on a Rule 12(b)(6) challenge, and in any event, demonstrates that AFAB did not include the AFAB company name.

AFAB provides no legitimate basis for the Court to rely on the photograph at this time. Instead, the Court, as it must at this stage in the litigation, assumes that all facts alleged in the amended complaint are true. AFAB's reliance on this photograph and argument that the facts alleged in the amended complaint are inaccurate flies in the face of the well-established standard

---

[19] The amended complaint also alleges that "Defendants have continued to represent that Pac-West is not the other owner of the RUSH®, PWD®, SUPER RUSH®, POWER-PAK PELLET®, and NEVER FAKE IT!® Marks, contrary to Section 2.2 of the Settlement Agreement." Am. Compl at ¶ 129 (Doc. No. 11). Because the motion to dismiss focuses solely on Pac-West's alleged breach of § 2.3 of the settlement agreement, the Court refrains from addressing the plausibility of this additional allegation.

16

for considering Rule 12(b)(6) challenges. Accordingly, the Court denies the motion to dismiss as it relates to the breach of contract claim.

### D. Tortious Interference Claims

AFAB requests the Court to dismiss Pac-West's Counts Ten and Eleven which allege tortious interference with existing and prospective contractual relations.[20] Pac-West alleges that AFAB tortiously interfered with current and prospective contractual relations by "undercutting" Pac-West's verbal agreements, and/or reasonably expected future agreements, with third-party retailers by selling the third-party retailers "[u]nlabeled AFAB [p]roducts . . . at lower prices and aiding, abetting, and encouraging [the third-party retailers] in mislabeling and then selling these products as authentic Pac-West products." Am. Compl. at ¶ 140 (Doc. No. 11).

"Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference." *Acumed LLC v. Adv. Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009).

AFAB advances two arguments for dismissing these claims. First, AFAB argues that the photograph discussed above, *supra* discussion section I.C, demonstrates that its products were not

---

[20] The amended complaint titles these claims as tortious interference with contractual relations (Count Ten) and tortious interference with prospective economic advantage (Count Eleven). Even so, the parties' briefing makes it clear that the Court should construe these counts as alleging AFAB's tortious interference with current and prospective contractual relations claims.

17

actually mislabeled. The Court again rejects AFAB's invitation to doubt Pac-West's allegations as plead. Second, AFAB argues that the claims fail because selling products at low prices does not constitute tortious interference with current or prospective contractual relations. In other words, it argues that it was merely engaging in privileged competitive behavior. However, AFAB's focus on its selling of products at lower prices does not encompass a fully accurate depiction of Pac-West's allegations. Rather, Pac-West pleads that AFAB devised a conspiratorial scheme where it provided its own products at low prices to those who had access to Pac-West's labels so that the alleged co-conspirators would wrap AFAB's products in Pac-West's marks in order to pass them off as if they were Pac-West's products. According to Pac-West, this conduct amounted to an independently actionable civil conspiracy,[21] and therefore, was not merely privileged competition. Because Pac-West plausibly plead facts alleging AFAB's conduct in setting forth a civil conspiracy,[22] the Court denies AFAB's request to dismiss these claims.

## II.     AFAB's Motion to Consolidate Cases

AFAB requests the Court to consolidate the present litigation with *AFAB Indus. Serv., Inc. v. Pac-West Distrib. NV LLC, et al.*, No. 19-566. As a matter of "convenience and economy in administration[,]" *In re TMI Litig.*, 193 F.3d 613, 724 (3d Cir. 1999) (citation omitted), a court

---

[21]     Although it appears that the Pennsylvania Supreme Court has not yet provided a definitive construction of the absence of privilege requirement, Pennsylvania courts look to § 768 of the Restatement (Second) of Torts and its definition of "wrongful means" for guidance as to whether the defendant has acted with privilege or justification. *Acumed*, 561 F.3d at 215 (citing *Gilbert v. Otterson*, 550 A.2d 550, 554 (Pa. 1988). Furthermore, the Third Circuit Court of Appeals has held that under § 768, "if the parties are competitors, [the factfinder] must find that [the defendant] engaged in independently actionable conduct for it to find in favor of [the plaintiff] on the tortious interference claim." *Id.* at 219; *accord Nat'l Data Payment Sys., Inc. v. Meridian Bank*, 212 F.3d 849, 858 (3d Cir. 2000) ("[W]e believe that Pennsylvania would follow the 'independently actionable' approach for § 768 claims."). In other words, "[i]n the absence of some evidence that [the defendant] engaged in independently actionable conduct, it is shielded from liability by the competition privilege, and thus . . . the tortious interference claim against it cannot stand." *Acumed*, 561 F.3d at 220.

[22]     AFAB does not move to dismiss Pac-West's civil conspiracy claim.

may consolidate actions that "involve a common question of law or fact," FED. R. CIV. P. 42. Consolidation "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *In re TMI Litig.*, 193 F.3d at 724. A district court has "broad discretion" when determining whether consolidation is appropriate, and courts often consider whether the judicial economy achieved through consolidation would be outweighed by confusion, prejudice, delay during the proceedings, and whether "one case is further into the discovery process." *Farahmand v. Rumsfeld*, No. 02-1236, 2002 WL 31630709, at *2 (E.D. Pa. Nov. 20, 2002). When considering a motion to consolidate, the movant bears the burden of proof. *Borough of Olyphant v. PPL Corp.*, 153 F. App'x 80, 82 (3d Cir. 2005).

AFAB argues that the two cases should be consolidated given the "overlapping nature of the parties and their respective claims, defenses, and likely evidence that will be involved in each case." Def.s' Mem. in Supp. of Mot. to Dismiss at 24 (Doc. No. 19). At oral argument, Pac-West stressed that there are many additional counts and facts at issue in the present case that are not at issue in *AFAB Indus. Serv., Inc. v. Pac-West Distrib. NV LLC, et al.*, No. 19-566. Pac-West also noted its concern for unnecessary delays in discovery.

Because the present case adds a notable layer of complication, claims, and facts to the array of claims and issues presented in *AFAB Indus. Serv., Inc. v. Pac-West Distrib. NV LLC, et al.*, No. 19-566, the Court finds that consolidating the actions will likely cause more trouble than what it is worth. Instead, judicial economy would best be achieved by keeping the matters progressing on separate tracks but which follow identical schedules. Accordingly, the Court denies AFAB's motion to consolidate.

## CONCLUSION

For the foregoing reasons, the Court denies AFAB's motion to dismiss and motion to consolidate. Even so, the Court permits AFAB an additional opportunity to demonstrate the alleged preclusive effect of the settlement agreement. An appropriate order follows.

BY THE COURT:

*s/Gene E.K. Pratter*
_____
**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**