IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAC-WEST DISTRIB. NV LLC, | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| AFAB INDUS. SERV., INC *et al.*, | : | **No. 19-3584** |
| *Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                                                                          JULY 27, 2021

The parties in this dispute are sellers and distributors of various cleaning products. They have litigated against each other for several years. Here, Pac-West Distributing NV LLC alleges that AFAB Industrial Services, Inc. and Everett Farr, III, as an AFAB corporate agent,[1] infringed upon Pac-West's trademarks and trade dresses, breached the parties' prior settlement agreement, and tortiously interfered with Pac-West's current and prospective contractual relationships.

AFAB previously moved to dismiss some of Pac-West's claims and to consolidate this action with a separate action that AFAB brought against Pac-West.[2] The Court denied AFAB's motion to dismiss and its motion to consolidate. However, the Court permitted AFAB another opportunity to meet its burden to establish that the parties' prior settlement agreement precludes Pac-West's claims related to its trademarks and trade dresses. AFAB has since filed a second motion to dismiss, which Pac-West opposes.

The Court denies AFAB's second motion to dismiss.

---

[1]     The Court refers to Defendants collectively as "AFAB."

[2]     In this other case, which is also presently before the Court and described in greater detail below, AFAB sued Pac-West and Trent Taylor, alleging breach of the parties' settlement agreement, unfair competition and false advertising under the Lanham Act, and common law unfair competition. *See AFAB Indus. Serv., Inc. v. Pac-West Distrib. NV LLC et al.*, No. 19-566.

## BACKGROUND

Because the Court writes for the benefit of the parties, this Memorandum assumes their basic familiarity with the facts pertinent to this case. *See Pac-W. Distrib. NV LLC v. AFAB Indus. Serv., Inc.*, No. 19-cv-3584, 2020 WL 4470447, at *1-2 (E.D. Pa. Aug. 4, 2020).

## I.     Prior Litigation

AFAB previously brought suit in this District in 2015 against Pac-West for common law defamation, tortious interference with prospective business relations, and unfair competition. *See Farr et al. v. Pac-West Distrib. NV LLC. et al.*, No. 16-175. AFAB also filed a petition to cancel Pac-West's registrations for its RUSH, PWD, and POWER-PAK PELLET marks and notices of opposition to Pac-West's applications for NEVER FAKE IT! and SUPER RUSH. AFAB alleged that Pac-West infringed upon its trademarks and trade dresses associated with the RUSH, PWD, SUPER RUSH, POWER-PAK PELLET and the unregistered NEVER FAKE IT! marks. Pac-West counterclaimed for defamation, false advertisement, trade dress infringement, false designation of origin, and common law unfair competition.

### A.     Settlement Agreement

On August 23, 2016, the parties entered into a settlement agreement that, among other terms, dismissed the litigation with prejudice and resolved the petition to cancel and notices of opposition.

Pertinent here, the settlement agreement contains the following provisions:

> 3.1     Pac-West/Taylor covenant not to sue (or send demand letters) to Farr or AFAB for any use of RUSH, PWD, SUPER RUSH, POWER PAK PELLET, and NEVER FAKE IT WITHOUT IT! for the goods AFAB is currently offering under those marks.

> 4.1     Subject to the terms of this Agreement, Pac-West/Taylor hereby release and forever discharge AFAB/Farr and any related companies, officers, directors, affiliates, predecessors, successors, assigns, employees, licensees, retailers, distributors, insurers and

2

agents for any and all causes of action, claims, attorney's fees, costs, damages, and liabilities, at law or in equity, known or unknown, arising out of or related to the Actions.[3]

Settlement Agreement, §§ 3.1, 4.1 (Case No. 19-3584, Doc. No. 22-1).[4]

## II.    The Related Case

In February 2019, AFAB sued Pac-West and Trent Taylor, alleging breach of the settlement agreement, unfair competition and false advertising under the Lanham Act, and common law unfair competition. *See AFAB Indus. Serv., Inc. v. Pac-West Distrib. NV LLC et al.*, No. 19-566.

The basis of AFAB's amended complaint is that the use of certain marketing claims on Pac-West's website imply that AFAB's products are counterfeit and pirated, despite the settlement agreement stating that AFAB could continue to sell such products.   According to AFAB, "Defendants' Website [www.neverfakeit.com] contained and continues to contain additional statements which indicate that <u>only</u> Defendants' Products can legally use the PWD, RUSH, SUPER RUSH, and POWER PAK PELLET trademarks and that <u>only</u> Defendants' Products containing such trademarks are authentic, genuine, and/or legal." Am. Compl. ¶ 22 (Case No. 19-566, Doc. No. 40) (emphasis in original).  These statements, AFAB asserts, disparage its products.

## III.   This Case

Pac-West filed the instant action against AFAB and Mr. Farr in August 2019.  Pac-West's amended complaint states that it owns various trademarks for its products, which include nail

---

[3]    The "Actions" include the federal litigation that began in 2015; AFAB's notices of opposition to Pac-West's applications for NEVER FAKE IT! and SUPER RUSH; and AFAB's petition to cancel Pac-West's registrations for the RUSH, PWD, and POWER-PAK PELLET marks.  Settlement Agreement, §§ 1.1-1.3 (Doc. No. 22-1).

[4]    Because neither party attached a copy of the settlement agreement to their briefs, the Court relies on an attachment to Pac-West's opposition to AFAB's first motion to dismiss. *See* Doc No. 22-1.

polish removers, incense, desiccants, and other related cleaning products. Am. Comp. ¶ 13 (Case No. 19-3584, Doc. No 11).

Pac-West alleges that AFAB has "purposefully advertised, promoted, offered for sale, sold, distributed and continue[s] to advertise, promote, offer for sale, sell and distribute" products that infringe on Pac-West's IRON HORSE, RUSH ORIGINAL, and GOLD RUSH marks as well as various trade dresses associated with its products bearing the IRON HORSE, RUSH ORIGINAL, GOLD RUSH, SUPER RUSH, RUSH, and NEVER FAKE IT! marks. *Id.* ¶¶ 14, 20, 34. Pac-West contends that AFAB's products mimic the color combinations; images; the position, format, size, and content of text; its "clutter free overall layout", *id.* ¶ 39(g); and bottle shapes of various Pac-West products. *Id.* ¶ 21. Pac-West asserts that AFAB made changes to its product labels and packaging after the parties entered into the settlement agreement. *Id.* ¶ 43.

Pac-West also alleges that AFAB breached the settlement agreement by failing to identify its address and corporate name on the packaging of products bearing RUSH, PWD, SUPER RUSH, POWER-PAK PELLET, and NEVER FAKE IT! marks. *Id.* ¶ 63.

Finally, as to tortious interference, Pac-West asserts that it had "verbal agreements" with unidentified "third-party retailers" for the use, purchase, and sale of Pac-West's goods and marketing materials. *Id.* ¶ 139. Pac-West alleges that AFAB undercut these agreements by selling its products to the third-party retailers "at lower prices" as a means to aid, abet, and encourage the retailers to sell counterfeit Pac-West products. *Id.* ¶ 140.

The Court denied AFAB's first motion to dismiss and its motion to consolidate but allowed AFAB another opportunity to establish that the parties' prior settlement agreement precludes Pac-West's claims related to its trademarks and trade dresses.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In evaluating a complaint's sufficiency, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences coming from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

However, this does not mean the Court must ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (citations and internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

DISCUSSION

## I.     AFAB's Second Motion to Dismiss

AFAB now seeks to dismiss certain of Pac-West's trade dress and trademark claims,[5] arguing that they are precluded by the parties' 2016 settlement agreement from the prior litigation. AFAB contends that the settlement agreement released AFAB "from all causes of action, claims, attorney's fees, costs, damages, and liabilities, at law or in equity, known or unknown, regarding the marketing and sales of [AFAB's] products which bore such trade dress." Doc. No. 42 at 6. As to Pac-West's claims regarding its RUSH ORIGINAL mark, AFAB asserts that these claims should be dismissed because they could have been raised during the prior litigation and were released as part of the settlement agreement. *Id.*

AFAB does not challenge Pac-West's claims regarding its IRON HORSE or GOLD RUSH marks, nor does it challenge Pac-West's claims for breach of contract or tortious interference. *Id.*

### A.     The Settlement Agreement

AFAB argues that Counts I through VII of the amended complaint are barred by claim preclusion. Specifically, it asks the Court to dismiss Pac-West's trade dress claims as to its RUSH, SUPER RUSH, PWD, NEVER FAKE IT!, and POWER-PAK PELLET marks as well as all claims associated with its RUSH ORIGINAL mark.

A claim preclusion defense is viable at the motion to dismiss stage, and a court may "take notice of all facts necessary for the decision." *Toscano v. Connecticut Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008). The moving party bears the burden of showing that claim preclusion, a type of res judicata, applies. *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir.

---

[5]     These include Pac-West's trade dress claims for its products bearing the RUSH, SUPER RUSH, PWD, NEVER FAKE IT!, and POWER-PAK PELLET marks, in addition to all claims related to Pac-West's RUSH ORIGINAL mark. Doc. No. 42 at 6.

1984). Claim preclusion bars the "relitigation of identical cases." *Sec'y U.S. Dep't of Labor v. Kwasny*, 853 F.3d 87, 94 (3d Cir. 2017). A party invoking claim preclusion must establish three elements: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Duhaney v. Att'y Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010) (quoting *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)).

"Judicially approved settlement agreements are considered final judgments on the merits for the purposes of claim preclusion." *Toscano*, 288 F. App'x at 38. Claim preclusion "does not bar claims that are predicated on events that postdate the filing of the initial complaint." *Morgan v. Covington Twp.*, 648 F.3d 172, 178 (3d Cir. 2011). *See Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008) ("Res judicata does not bar a suit based on claims that accrue after a previous suit was filed. It does not matter whether . . . the unlawful conduct is a practice, repetitive by nature . . . that happens to continue after the first suit is filed, or whether it is an act, causing discrete, calculable harm, that happens to be repeated." (internal citations omitted)).

If dismissal of the prior suit is triggered by a settlement agreement, "'[a] somewhat modified form of res judicata' applies." *Toscano*, 288 F. App'x at 38 (quoting *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1291 (11th Cir. 2004)). When that occurs, "[t]he express terms of a settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a settlement." *Id.* (citing *Norfolk*, 371 F.3d at 1291 (holding that "to preclude a wider range of matters than those specified in the Agreement would frustrate the parties' expressed intent and bestow upon [the defendant] a windfall of immunity from litigation" (alteration in original))).

In allowing AFAB another opportunity to show the possible preclusive effect of the settlement agreement vis-à-vis certain claims, the Court specifically admonished AFAB that

"another half-hearted attempt to broadly assert the settlement agreement's preclusive effect which fails to include the detailed analysis necessary for the Court to interpret the relevant contractual language will undoubtedly prove fruitless." *Pac-W. Distrib. NV LLC*, 2020 WL 4470447, at *6. Although AFAB has refocused its arguments in this second motion to dismiss, at this time the Court cannot conclude that AFAB has met its burden in showing how the settlement agreement precludes the remaining claims at issue in this case.

AFAB argues that the Court should dismiss certain claims because they were already raised, or could have been raised (but were not), in the prior litigation. AFAB contends that Pac-West's counterclaims from the prior litigation factually overlap with the claims in the amended complaint. Furthermore, AFAB asserts that Pac-West's trade dress for its products containing the RUSH, SUPER RUSH, PWD, NEVER FAKE IT!, and POWER-PAK PELLET marks has not changed from the prior litigation to now, nor has AFAB's.

In support, AFAB includes several side-by-side photographs in its motion. Given the purported similarity between these photographs of the parties' products from the prior counterclaims and from the amended complaint, AFAB urges the Court to find that they are based on the same claims and, thus, are precluded. AFAB also argues that Pac-West raises here substantially similar claims that were already raised in the prior litigation. Doc. No. 42 at 18. It takes issue with Pac-West's claims for federal trademark infringement under the Lanham Act (Count II) and trademark counterfeiting under the Lanham Act (Count III), arguing that these could have been raised in the prior litigation. For similar reasons, AFAB argues that Pac-West could have brought all of its current claims related to the RUSH ORIGINAL mark in the prior litigation.

AFAB concludes by stating that the settlement agreement had "clear and broad language" and that Pac-West released and forever discharged AFAB "from any and all causes of action and

claims that were known or unknown that arose from or were related to the Prior Litigation." Doc. No. 42 at 23. Thus, AFAB claims that these trade dresses and marks are precluded by the settlement agreement and should be dismissed with prejudice, asserting that "the Settlement Agreement acknowledged that all claims in the Prior Litigation were dismissed, with prejudice." Doc. No. 42 at 9 (emphasis in original).

In response, Pac-West argues that AFAB is trying to stretch the settlement agreement's limited release regarding past trademark infringement claims "to indefinitely cover future trade dress claims that did not exist at the time of the action." Doc. No. 43 at 5. Pac-West argues that AFAB has again invited the Court to "engage in [a] factual analysis of photographs of the respective products and packaging." *Id.* Furthermore, Pac-West contends that its allegations pertain to, among other things, trademark and trade dress infringement that occurred *after* the parties executed their settlement agreement. Pac-West asserts that its "claims concern matters that were not—and could not have been—raised in the Prior Litigation" because the RUSH ORIGINAL mark was not part of the prior litigation and Pac-West's trade dress claims "concern acts that occurred *after* the parties executed the Settlement Agreement." Doc. No. 42 at 8. Thus, Pac-West argues that it could not have asserted its current claims regarding trade dress infringement because "the material facts underlying these claims did not exist at the time the Parties entered into the Settlement Agreement." Doc. No. 43 at 25.

As the Court has previously stated, its "determination hinges on whether the settlement agreement provisions at issue prohibit Pac-West's claims." *Pac-W. Distrib. NV LLC*, 2020 WL 4470447, at *4. Under § 4.1 of the settlement agreement, Pac-West and Mr. Taylor "release[d] and forever discharge[d] AFAB/FARR . . . for any and all causes of action, claims, attorney's fees, costs, damages, and liabilities . . . known or unknown, arising out of or related to the Actions."

Doc. No. 22-1. Furthermore, § 3.1 provides that Pac-West agrees not to sue AFAB for "any use of RUSH, PWD, SUPER RUSH, POWER PAK PELLET, and NEVER FAKE IT WITHOUT IT! for the goods AFAB is currently offering under those marks." *Id.*

AFAB contends that the settlement agreement precludes Pac-West from raising any claims in the amended complaint that were raised or could have been raised in the prior litigation. However, notably absent from AFAB's motion is the detailed analysis necessary to guide the Court's interpretation of the settlement agreement's relevant contractual language. To be sure, AFAB highlights that §§ 3.1 and 4.1 of the settlement agreement are pertinent to its motion. However, AFAB fails to analyze the actual language of the agreement. Pac-West emphasizes that the allegations at issue in the motion to dismiss are based on AFAB's conduct that occurred after the parties executed the settlement agreement. Accordingly, Pac-West contends that claim preclusion typically cannot be used to bar suits based on future events.

"Claim preclusion generally 'does not bar claims that are predicated on events that postdate the filing of the initial complaint.'" *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1596 (2020) (quoting *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2305 (2016)). However, the terms of the settlement agreement govern preclusion. Logically, then, causes of action predicated on events occurring after the execution of the settlement agreement could theoretically be precluded if the terms of the settlement agreement so provide.[6] Even if all of the actions that form the basis for Pac-West's claims occurred after the settlement agreement went into effect, that does not necessarily preclude the Court's analysis. Rather, the Court must

---

[6]     The appellants in *Blunt v. Lower Merion School District* argued that the settlement agreement in that case could not bar claims arising after the settlement agreement's effective date. 767 F.3d 247, 282 n.51 (3d Cir. 2014). However, because the language of the release barred claims brought by future students, the Third Circuit Court of Appeals rejected the appellants' argument and concluded that such a prohibition necessarily barred claims arising after the settlement agreement's effective date. *Id.*

determine whether the settlement agreement's language precludes suits based on AFAB's alleged actions, including any actions that postdate the settlement agreement.

### 1. *RUSH ORIGINAL Trademark Claim*

The Court first turns to Pac-West's trademark infringement claim regarding RUSH ORIGINAL (stylized mark) (Reg. No. 5,084,851). The RUSH ORIGINAL mark was registered on November 22, 2016.[7] Doc. No. 11-1 at 5. Thus, this mark was registered after the parties entered into the settlement agreement three months earlier, on August 23, 2016. The RUSH ORIGINAL mark was not mentioned in Pac-West's counterclaims brought in the prior litigation, nor was it referenced in the settlement agreement. Instead, the prior litigation, and § 3.1 of settlement agreement (the covenant not to sue), concerned the alleged infringement of the RUSH, PWD, SUPER RUSH, POWER PAK PELLET, and NEVER FAKE IT WITHOUT IT! marks. By its terms, then, this provision of the settlement agreement does not prohibit Pac-West from suing AFAB for any infringing use of the RUSH ORIGINAL mark.

As to § 4.1 of the settlement agreement (the release provision), AFAB argues that Pac-West released and forever discharged AFAB from any and all causes of action related to the prior litigation. In other words, AFAB appears to argue that the release provision protects AFAB from ever being sued by Pac-West over a trademark dispute related to the claims in the prior litigation. Yet, once again, AFAB gives no guidance as to how the Court could construe § 4.1's "arising out of and relating to" language to preclude claims concerning the RUSH ORIGINAL mark, especially given the fact that that trademark was not at issue in the prior litigation or identified in the settlement agreement. Thus, as before, the Court is left to guess as to how it could possibly conclude that AFAB has met its burden in proving that the amended complaint's RUSH

---

[7]     The filing date for the RUSH ORIGINAL application was September 16, 2015. Doc. No. 11 at 5.

ORIGINAL trademark infringement claim somehow arises out of and relates to past actions concerning the RUSH, PWD, SUPER RUSH, POWER PAK PELLET, and NEVER FAKE IT WITHOUT IT! trademarks.

Indeed, Pac-West makes a strong argument that the parties intended for the settlement agreement to cover only matters contemplated by that agreement.  Because the settlement agreement does not mention RUSH ORIGINAL, and because that mark was not at issue in the prior litigation, the Court cannot logically or legally conclude that claims related to the RUSH ORIGINAL mark "arise out of and relate to" the actions in the settlement agreement. *See Fairfield Henry, LLC v. Philadelphia Indem. Ins. Co.*, No. 12-cv-5079, 2014 WL 991593, at *8 (E.D. Pa. Mar. 13, 2014) ("In determining the intent of the parties to a release, the Court must look at the agreement as a whole.") (citing *Lesko v. Frankford Hosp.-Bucks Cty.*, 15 A.3d 337, 342 (Pa. 2011)).  Furthermore, nothing in the settlement agreement could reasonably be construed as limiting Pac-West's ability to sue AFAB for any future infringements related to the RUSH ORIGINAL mark.

Despite getting a second chance to sustain its burden to show how the RUSH ORIGINAL trademark claim is precluded at this stage, AFAB has failed to do so.  Thus, at this time, the Court will not dismiss Pac-West's trademark infringement claims concerning its RUSH ORIGINAL mark.

### 2. *Trade Dress Claims*

Next, the Court turns to whether claim preclusion bars Pac-West's trade dress infringement claims in its amended complaint.  "'Trade dress has been defined as the total image or overall appearance of a product, and includes, but is not limited to, such features as size, shape, color or color combinations, texture, graphics, or even a particular sales technique.'" *Fair Wind Sailing,*

*Inc. v. Dempster*, 764 F.3d 303, 308 (3d Cir. 2014) (quoting *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 171 (3d Cir. 2000)).   In other words, "trade dress is the overall look of a product or business." *Id.*

Pac-West alleges that AFAB has "purposefully advertised, promoted, offered for sale, sold, distributed and continue[s] to advertise, promote, offer for sale, sell and distribute" products that infringe on various trade dresses related to its products bearing the IRON HORSE, RUSH ORIGINAL, GOLD RUSH, SUPER RUSH, RUSH, and NEVER FAKE IT! marks.   Am. Compl. ¶ 34, 39.   Pac-West alleges that *after* the settlement agreement went into effect, AFAB made changes to its products in order to mimic the color combinations; images; the position, format, size, and content of text; its "clutter free overall layout", *id.* ¶ 39(g); and bottle shapes found on various Pac-West products.   *See id.* ¶ 4 (alleging that AFAB has "recently begun to directly copy, and plagiarize Pac-West's trade dresses") and ¶ 38 (alleging that AFAB changed its "product labels and packaging to mimic" Pac-West's trade dresses "almost identically").

Section 3.1 of the settlement agreement states that Pac-West will not sue AFAB "for any use of RUSH, PWD, SUPER RUSH, POWER PAK PELLET, and NEVER FAKE IT WITHOUT IT! for the goods AFAB is currently offering under those marks."   Doc. No. 22-1.   Thus, by its plain language, this provision of the settlement agreement only applies to AFAB's use of those *trademarks*.   As the Court previously explained, "[t]rademarks and *trade dresses* . . . are two distinctive forms of intellectual property."   *Pac-W. Distrib. NV LLC*, 2020 WL 4470447, at *6. Contesting an alleged infringing use of a trademark is different than challenging an alleged infringing use of a trade dress.   In fact, a plaintiff can bring a trade dress infringement claim without ever alleging trademark infringement.   *See Duraco Prod., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1438 (3d Cir. 1994) (noting that "leading case" on trade dress law "held that the defendant

had unfairly competed with the plaintiff by utilizing the same design and colors as the plaintiff for packaging its lawn and garden products, even though the defendant prominently employed a different brand name." (citing *Chevron Chem. Co. v. Voluntary Purchasing Grps., Inc.*, 659 F.2d 695, 700-02 (5th Cir. 1981))).

As for the release provision in § 4.1, because products bearing the RUSH ORIGINAL mark were not part of the prior litigation, it remains to be seen how Pac-West's current claims concerning the alleged trade dress infringement of RUSH ORIGINAL products arise out of or relate to the prior litigation. That said, Pac-West *did* allege trade dress infringement related to the RUSH, SUPER RUSH, and NEVER FAKE IT! marks in the prior litigation. This gives more credence to the argument that the settlement agreement's release language could concern Pac-West's trade dress claims as to products bearing those marks.

However, as before, AFAB has not demonstrated why this release language would preclude Pac-West from bringing claims alleging infringement occurring *after* the settlement agreement went into effect. And here, Pac-West specifically alleges that its claims relate to AFAB's conduct after the parties executed the settlement agreement. Although AFAB argues that "[n]othing has changed after the Settlement Agreement which would open the door for new claims," Doc. No. 47 at 5, and urges the Court to analyze the side-by-side photographs it submitted in its motion and conclude that no changes were made, the Court declines to do so now. As underscored by Pac-West, Doc. No. 43 at 26, such an analysis of various products' trade dresses constitutes a factual issue that would be inappropriate for the Court to try to resolve at this time.

At the motion to dismiss stage, the Court must accept as true the factual allegations in the amended complaint and construe all reasonable inferences in favor of Pac-West, the non-moving party. Furthermore, as AFAB itself has pointed out, if AFAB "had only changed their product

labels and packaging to incorporate [Pac-West's] purported trade dress *after* the Settlement Agreement, then there may be a factual inquiry necessary that would preclude a motion to dismiss." Doc. No. 42 at 16. The Court agrees. Thus, the Court cannot find that Pac-West's trade dress claims are precluded at this time.

CONCLUSION

For the foregoing reasons, the Court denies AFAB's second motion to dismiss. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE