IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PAC-WEST DISTRIBUTING NV LLC,** *Plaintiff* | : <br> : **CIVIL ACTION** <br> : |
| v. | : <br> : |
| **AFAB INDUSTRIAL SERVICES, INC., et al.,** *Defendants* | : <br> : **No. 19-3584** <br> : |

## MEMORANDUM

PRATTER, J.                                                                          MARCH 10, 2022

The parties in this dispute each sell a chemical compound labeled for cleaning and cosmetic uses. They previously litigated the use of certain trademarks and trade dress in federal court and before the U.S. Patent and Trademark Office, ostensibly resolving this dispute through a 2016 settlement agreement. Now Pac-West alleges that AFAB and Everett Farr, III, as a corporate agent of AFAB,[1] infringed upon its trademarks and trade dress, breached the 2016 settlement agreement, and tortiously interfered with its current and prospective contractual relations.

AFAB filed a motion for summary judgment on Pac-West's claims. For the reasons discussed below, the Court denies summary judgment on the bases of prior use, laches, and breach of the labeling provision and grants summary judgment on the tortious interference claim and the trade dress claims related to the RUSH, SUPER RUSH, and NEVER FAKE IT! marks.

### BACKGROUND

The Court writes for the benefit of the parties, without detailed discussion of the underlying facts pertinent to this case. *See Pac-W. Distrib. v. AFAB Indus. Servs., Inc.*, No. 19-cv-3584, 2020 WL 4470447, at *1–2 (E.D. Pa. Aug. 4, 2020).

---

[1] The Court refers to the defendants collectively as "AFAB."

1

## I. Prior Litigation

AFAB brought suit in this District in 2015 against Pac-West for a variety of claims. Similar to the present case, Pac-West filed a slew of counterclaims and AFAB responded with counterclaims of its own. *See Farr v. Pac-West Distrib, et al.*, No. 16-cv-175 (the "Prior Litigation"). AFAB also filed a petition in the U.S. Patent and Trademark Office to cancel various of Pac-West's registrations and also filed notices of opposition to various of Pac-West's applications for other marks.

On August 23, 2016, the parties entered into a settlement agreement (the "Settlement Agreement") that, among other terms, dismissed the then-pending litigation with prejudice and resolved the petition to cancel and notices of opposition in the U.S. Patent and Trademark Office.

## II. This Action

Pac-West brought the present action against AFAB and Mr. Farr in August 2019. Pac-West claims that AFAB has "purposefully advertised, promoted, offered for sale, sold, distributed and continue to advertise, promote, offer for sale, sell and distribute" products that infringe on Pac-West's IRON HORSE, RUSH ORIGINAL, and GOLD RUSH marks, as well as trade dress associated with its products bearing the IRON HORSE, RUSH ORIGINAL, GOLD RUSH, SUPER RUSH, RUSH, and NEVER FAKE IT! Marks. Doc. No. 11, Am. Compl. ¶ 34. Pac-West alleges that AFAB's products mimic the color combinations, images, text, the "clutter free overall layout," and bottle shapes found on various Pac-West products. *Id.* ¶ 39. Pac-West asserts that AFAB made these changes to its product labels and packaging *after* the parties entered into the Settlement Agreement.

Next, Pac-West alleges that AFAB breached the Settlement Agreement by failing to identify its address and corporate name on the packaging of products bearing the RUSH, PWD, SUPER RUSH, POWER-PAK PELLET, and NEVER FAKE IT! trademarks.

Finally, in advancing its tortious interference claims, Pac-West asserts that "verbal agreements" existed between Pac-West and unidentified "third-party retailers" for the use, purchase, and sale of Pac-West's goods and marketing materials. *Id.* ¶ 139. Pac-West asserts that AFAB undercut these agreements by selling its products to the third-party retailers "at lower prices" as a means to aid, abet, and encourage the retailers to sell counterfeit Pac-West products. *Id.* ¶ 140.

AFAB now moves for summary judgment on Pac-West's claims.

## LEGAL STANDARD

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 252. "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (internal quotation marks omitted).

## DISCUSSION

AFAB moves for summary judgment on Pac-West's claims arguing: (1) AFAB's prior use makes it the senior user of GOLD RUSH and IRON HORSE; (2) Pac-West's claims are barred by laches; (3) Pac-West's claims are barred by claim preclusion from the Settlement Agreement; (4) Pac-West's labeling claims fail as a matter of law based on AFAB's use of a fictitious legal name; (5) Pac-West does not dispute the lack of evidence for tortious interference with third-party relations; and (6) Pac-West's claims are barred by its own unlawful use of the trademarks. The Court addresses each in turn.

## I. Senior Use

AFAB argues that "all of [Pac-West's] claims premised on its subsequent Use and/or Registrations" of the GOLD RUSH and IRON HORSE Trademarks should be dismissed because "it is incontrovertible that [AFAB and Mr. Farr] possess priority as the Senior User" of these two Trademarks. Doc. No. 66, at 9 (emphasis in original).

"Generally, under common law, the senior user's trademark rights prevail over a subsequent user's rights to the same mark in the same geographical area." *Three Rivers Confections, LLC v. Warman*, 660 F. App'x 103, 107 (3d Cir. 2016). AFAB contends that is has priority as the senior user of these marks even though Pac-West registered them because "a federal registrant is still subject to the defense of a prior user of the mark who has established a market in specific areas notwithstanding that senior user's failure to register." *Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1395 (3d Cir. 1985). The Court will analyze the claims as to the IRON HORSE and GOLD RUSH trademarks in turn.

4

*A. IRON HORSE*

AFAB argues that it "first started using the IRON HORSE Trademark in or around 1994." Doc. No. 66, at 5.[2] As supporting evidence, AFAB cites Mr. Farr's declaration and Sarita Krupa's deposition testimony. AFAB maintains that its first use in 1994 trumps the August 20, 2012 date of Pac-West's earliest trademark application. Doc. No. 66, at 18. AFAB also notes that Pac-West's application to the U.S. Patent and Trademark Office claimed a first use date of February 1, 2003, but argues that Pac-West has not offered evidence of this first use and that 1994 predates this alleged first use as well. *Id.* at 18–19.

While Pac-West cites *Three Rivers* on another point,[3] neither party raises or addresses the relevant portion of *Three Rivers*: the party asserting senior usage is "required to show significant 'market penetration' and a 'clear entitlement' to protection of the [trademark] in a particular market." *Three Rivers*, 660 F. App'x at 108 (quoting *Nat. Footwear Ltd.*, 760 F.2d at 1397). Mr. Farr's declaration generically asserts that AFAB has sold IRON HORSE products since 1994 without providing any information on market penetration or a geographic market definition. Doc. No. 66-3 ¶¶ 5, 16–17. Therefore, the Court denies summary judgment on the issue of senior usage for IRON HORSE.

---

[2] AFAB further asserts that it has "not sold any IRON HORSE branded products since July 2019, as sale of such products was limited." *Id.* (emphasis in original).

[3] Pac-West argues that AFAB's reliance on "[a] declaration without any corroborating documentary evidence is insufficient for summary judgment" under *Three Rivers*. Doc. No. 74, at 3. As an initial matter, this characterization is inaccurate; AFAB also cites the deposition testimony of Sarita Krupa. Doc. No. 66, at 5 (citing Doc. No. 66-2, S. Krupa Dep. Tr. at 58-59). And, as Pac-West itself notes, the Court of Appeals in *Three Rivers* explained that the declarant's statement at issue was "vague" and contradicted by deposition testimony and government filings. *Three Rivers*, 660 F. App'x at 108. Pac-West makes no such argument about Mr. Farr's declaration, so Pac-West's argument on this point is unavailing.

5

*B. GOLD RUSH*

Additionally, AFAB argues that it "first used its GOLD RUSH Trademark on August 11, 2011." Doc. No. 66, at 5. AFAB maintains that this predates Pac-West's earliest trademark application date of April 16, 2015. Doc. No. 66, at 16. Pac-West counters by arguing that its usage predates AFAB's usage of GOLD RUSH through its predecessors-in-interest because "GOLD RUSH is an extension of the RUSH brand first owned by Great Lakes Products, Inc., and then sold to Grand Canyon Products, Inc. [on] . . . January 7, 2011 . . ., and then sold to Pac-West [on] . . . May 1, 2014." Doc. No. 74, at 7–8. Under this theory, Pac-West appears to assert a date of first use prior to January 7, 2011.

Pac-West argues that "[i]t is understood that due to the similarities in the RUSH and GOLD RUSH name and labelling—namely, the lightning bolt and use of the NEVER FAKE IT mark—that GOLD RUSH is a part of the family of RUSH products owned by Pac-West's predecessors-in-interest." Doc. No. 74, at 7–8. However, what "is understood" from a fact is an inference unsuited for summary judgment, *Ideal Dairy Farms*, 90 F.3d at 744, and neither party has provided sufficient evidence on this point for the Court to rule on it as a matter of law. Therefore, the Court also denies summary judgment on the issue of senior usage for the GOLD RUSH trademark.

**II.     Laches**

AFAB also argues (presumably in the alternative to senior usage) that the doctrine of laches precludes Pac-West's claims based on the GOLD RUSH and IRON HORSE trademarks. Laches is "relevant where the senior user delays in asserting its rights for so long that the junior user has developed sufficient demand and goodwill through its own efforts that it would be inequitable to enforce the senior's rights." *Univ. of Pittsburgh v. Champion Prods., Inc.*, 686 F.2d 1040, 1047

6

(3d Cir. 1982). The defense of laches requires showing "(1) inexcusable delay in instituting suit and (2) prejudice to the defendant resulting from such delay." *Id.*

AFAB contends that Pac-West has been aware of its use of GOLD RUSH and IRON HORSE "since at least the 2000s" and took no action. Doc. No. 66, at 20. In particular, AFAB faults Pac-West for not raising the GOLD RUSH and IRON HORSE claims in the Prior Litigation. *Id.* Yet, neither party notes that Pac-West *did* raise the IRON HORSE claims as an initial counterclaim in the Prior Litigation, although the IRON HORSE trademark disappears from the last of three amended counterclaims except for a single remaining picture of "other Marks." *Compare* Case. No. 16-175, Doc. No. 26, at 17 ¶ 3 (defining "PWD Trademarks" to include "Iron Horse") *with* Case. No. 16-175, Doc. No. 31, at 15 ¶¶ 17, 28 (showing a picture of an IRON HORSE product without defining "PWD Marks" to include IRON HORSE). Neither party addresses the significance of Pac-West dropping an IRON HORSE claim in the Prior Litigation for AFAB's laches defense. Indeed, AFAB and Pac-West have engaged in so many rounds of claims and counterclaims that it appears neither party can keep their arguments straight. Based on this open factual issue regarding whether Pac-West actually delayed in bringing claims based on IRON HORSE, the Court will not grant summary judgment on the IRON HORSE claims.

The Court's analysis will thus focus on the GOLD RUSH claims. Pac-West counters that AFAB ignores the laches standard in trademark and unfair competition claims, which is 6 years in Pennsylvania (including Lanham Act claims). *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 138 (3d Cir. 2005). Pac-West argues that it was founded in May 6, 2014, so mathematically it could not have known of the use of the marks more than six years before this litigation commenced on August 7, 2019. Doc. No. 74, at 9. This stance creates obvious tension with Pac-West's senior usage arguments relying on its predecessors-in-interest, but AFAB does

7

irrelevant

not dispute this argument for laches purposes.[4] Moreover, laches would not promote justice as an equitable remedy here because both parties have unclean hands with respect to attempting to relitigate old claims addressed and resolved by the Settlement Agreement.[5] *See Gov't Emps. Ret. Sys. of Virgin Islands v. Gov't of Virgin Islands*, 995 F.3d 66, 94 (3d Cir. 2021). Therefore, the Court denies AFAB's summary judgment motion on the basis of laches.

**III. Claim Preclusion**

AFAB also argues that Pac-West's trade dress and RUSH ORIGINAL trademark claims are barred by the resolution of the parties' rights to the RUSH trademark in the Settlement Agreement and the U.S. Patent and Trademark Office proceedings. Doc. No. 66, at 21. AFAB contends that claim preclusion prevents Pac-West from raising these claims because they are based on the same causes of action that were raised, or could have been raised, in the Prior Litigation. *Id.* at 22.

*A. RUSH ORIGINAL Trademark*

At the motion to dismiss stage, this Court ruled that claim preclusion did not apply to the RUSH ORIGINAL mark because it was not registered until after the Settlement Agreement. Doc. No. 59, at 11. The Court held that "[b]ecause the settlement agreement does not mention RUSH ORIGINAL, and because that mark was not at issue in the prior litigation, the Court cannot logically or legally conclude that claims related to the RUSH ORIGINAL mark 'arise out of and relate to' the actions in the settlement agreement." *Id.* at 12.

---

[4] Mr. Taylor (agent of Pac-West) also introduces an asset purchase agreement from May 1, 2014, but this agreement does not include the GOLD RUSH trademark. Doc. No. 75-4, at 13. This again leads to the factual issue of whether RUSH is "understood to" encompass GOLD RUSH as discussed, *supra*.

[5] For example, AFAB asserts counterclaims in the instant litigation that are virtually identical to counterclaims that AFAB raised in the Prior Litigation. *Compare* Doc. No. 68 ¶¶ 76–96, *with* Case No. 16-cv-175, Doc. No. 32, at 19–22 (May 23, 2016).

8

Now, AFAB argues that, although "[n]o specific written word allegations about the RUSH ORIGINAL Trademark were made," Doc. No. 66, at 8, one paragraph from the counterclaims in the Prior Action included a photograph of a RUSH ORIGINAL bottle, *id.* at 7 (citing Case No. 16-175, Doc. No. 31 ¶ 78). However, this argument takes the single photograph out of context. The prior counterclaim presented photographs of pairs of bottles and alleged that "the Infringing Products are on the right." Case No. 16-cv-175, Doc. No. 31 ¶ 78. The bottle pictured on the right side of the photograph presented by AFAB here did not include the word "ORIGINAL" under "RUSH." *Id.* Rather, the cropped photograph on which AFAB now relies shows the *left* bottle. *Id.* In other words, the bottle "at issue" in the Prior Counterclaims was the bottle on the right, not the bottle AFAB now crops from the left side of the photograph. Therefore, this single photograph of a RUSH ORIGINAL bottle does not establish that the RUSH ORIGINAL trademark was at issue in the Prior Litigation.

### B. Trade Dress

AFAB also reasserts the same arguments from its second motion to dismiss based on trade dress. AFAB reiterates that "nothing has changed" after the Settlement Agreement which would open the door for new trade dress claims. Doc. No. 66, at ECF 9; Doc. No. 47, at 2. Thus, AFAB argues that Pac-West's trade dress arguments, too, are barred by claim preclusion.

"[F]ederal claim preclusion requires (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *In re Healthcare Real Est. Partners, LLC*, 941 F.3d 64, 72 (3d Cir. 2019) (internal quotation marks omitted). The trade dress claims meet each of the three elements and are thus precluded by the Prior Litigation. First, the Settlement Agreement constituted a final judgment on the merits because the Prior Litigation was dismissed with prejudice. *See Ecore Int'l, Inc. v.*

9

*Downey*, 343 F. Supp. 3d 459, 508 (E.D. Pa. 2018) ("A judgment entered with prejudice pursuant to a settlement is a final judgment on the merits for the purposes of res judicata.") (internal quotation marks omitted). Second, the parties in the Prior Litigation and the present litigation are the same: AFAB, Mr. Farr, Pac-West, and Mr. Taylor. Third, the causes of action share "essential similarity." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014). This last element is the focus of the dispute and requires additional elaboration.

Pac-West asserts three main arguments why this suit is not essentially similar to the one resolved by the 2016 Settlement Agreement. First, Pac-West argues that the 2016 Settlement Agreement did not address trade dress claims. Second, Pac-West argues that, even if the 2016 Settlement *did* address these claims, it does not matter because AFAB's infringing behavior started after the Settlement Agreement. Third, attempting to circumvent the Settlement Agreement entirely, Pac-West argues that the Settlement Agreement was not intended to address trade dress issues.

### 1. Whether the Settlement Agreement Resolved Trade Dress Claims

At the motion to dismiss stage, the Court declined to analyze changes in the trade dress in photographs presented by the parties because this would "constitute[] a factual issue that would be inappropriate" at the motion to dismiss stage. Doc. No. 59, at 14. Now, at the summary judgment stage, the Court agrees that analysis of this factual issue is appropriate.

In the Prior Litigation, Pac-West asserted counterclaims that included allegations based on the "particularly distinctive trade dress" of the RUSH, PWD, and NEVER FAKE IT! marks. Case No. 16-cv-175, Doc. No. 31, at 14 ¶¶ 12, 17. The prior counterclaims stated that "[t]he products associated with the RUSH marks consistently use an iconic lightning bolt logo with a yellow and red logo in all-caps." Case No. 16-cv-175, Doc. No. 31, at 14 ¶ 13. This describes the same trade

10

dress at issue here. Although the Settlement Agreement did not expressly identify trade dress claims, it released all claims "arising out of or related to the Actions," acknowledged that all claims in the Prior Litigation were dismissed with prejudice, and included a covenant not to institute any lawsuit "regarding the sale of AFAB's products that bear the RUSH, PWD, SUPER RUSH, POWER PAK PELLET, and NEVER FAKE IT WITHOUT IT! marks." Doc. No. 22-1 ¶¶ 3.2, 4.1, 5.1.[6] Therefore, Pac-West's argument that the Settlement Agreement does not resolve the trade dress claims in unavailing.

2. *Whether AFAB's Allegedly Infringing Conduct Began or Continued After the Settlement Agreement*

Next, Pac-West alleges that AFAB changed its labels to mimic Pac-West's trade dress after the Settlement Agreement. But as AFAB points out, Pac-West's Prior Counterclaims specifically stated that "[t]he products associated with the RUSH marks consistently use an iconic lightning bolt logo with a yellow and red logo in all-caps," Case No. 16-cv-175, Doc. No. 31, at 14 ¶ 13, and included photographs showing both companies using this trade dress in May 2016:



*Id.* at 26 ¶ 78. In other words, this issue existed both before and after the Settlement Agreement. Therefore, it is clear that AFAB did not change its labels to mimic Pac-West's Trade Dress *after* the Settlement Agreement.

---

[6] AFAB also argued that the RUSH ORIGINAL claims are precluded because, although they were not resolved by the Settlement Agreement, claims based on this trademark could have been raised in the Prior Litigation. This argument fails for the reasons stated in Section III.A, *supra*.

11

Mr. Taylor also states in his declaration that "Farr/AFAB have changed their trade dress after the 2016 Settlement Agreement." Doc. No. 75 ¶ 47. The only example he provides, however, is that AFAB made a fine-print label change, switching from the domain name "RUSTYANCHORMARKETING.COM" to "I.C.E. BENSALEM, PA." *Id.* ¶ 48–51. Unlike the allegation that AFAB adopted Pac-West's distinctive trade dress after the Settlement Agreement, this label change is in no way related to the "distinctive" trade dress at issue (*e.g.*, red and yellow coloring and the lightning bolt).[7] Thus, Pac-West fails to rebut AFAB's evidence that it did not change its trade dress after the Settlement Agreement.

Additionally, Pac-West argues that instances of trade dress infringement after the Settlement Agreement involving "different combinations of infringing acts, occurring at different time, than infringing acts claimed in the Prior Litigation" are distinct and should not be precluded. Doc. No. 74, at 16. However, Pac-West has not provided *any evidence* of a "different combination" of infringing acts. As the pictures above demonstrate, AFAB's use of the color scheme, lightning bolt, RUSH font, and NEVER FAKE IT! banner have not changed. Nor did Pac-West allege a theory of continuing infringement. In its Amended Complaint, Pac-West does not allege that AFAB continued using these trade dress features as a distinct post-settlement violation, but rather, that AFAB "recently" changed its trade dress to begin using these features after the Settlement Agreement for the first time. Doc. No. 11 ¶ 4. Pac-West's new argument in opposition to summary judgment does not raise a theory of subsequent infringement to create a distinct claim. Nor could it; a party cannot raise a new claim in an opposition brief. *Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008) (quoting *Shanahan v. City of Chi.*, 82 F.3d 776,

---

[7] As Mr. Taylor himself notes, the Settlement Agreement *required* AFAB to change the label name to "the AFAB company name." In a separate claim discussed *infra*, the parties disagree as to whether the name "I.C.E. Bensalem, Pa." sufficiently identifies AFAB. Doc. No. 75 ¶ 51.

12

781 (7th Cir. 1996)). Therefore, Pac-West's arguments based on changes that post-date the Settlement Agreement fail on each point.

*3. Whether the Parties Intended the Settlement Agreement to Resolve Trade Dress Claims*

Lastly, attempting to circumvent the Settlement Agreement, Pac-West claims that it did not *intend* for the Settlement Agreement to address trade dress claims. In his declaration, Mr. Taylor asserts that he "never intended for the Pac-West Trade Dresses to be included in the Settlement Agreement and the Pac-West Trade Dresses were specifically left out of the Settlement Agreement." Doc. No. 75 ¶ 39. But a basic principle of contract law, the parol evidence rule, precludes the Court from considering this statement for summary judgment purposes. Pennsylvania law prohibits "the introduction of parol evidence of antecedent or contemporaneous agreements, negotiations and understandings of the contracting parties for the purpose of varying or contradicting the terms of a contract which both parties intended to represent the definite and complete statement of their agreement." *Am. Bank & Tr. Co. of Pa. v. Lied*, 409 A.2d 377, 381 (Pa. 1979). Here, the Settlement Agreement contains an integration clause, *see* Doc. No. 22-1 ¶ 6.8, and Mr. Taylor's assertion contradicts the terms of the contract because (1) the Settlement Agreement dismissed the Prior Litigation with prejudice and (2) the Prior Counterclaims in the Prior Litigation raised trade dress claims based on the RUSH, SUPER RUSH, PWD, and NEVER FAKE IT! marks. Therefore, the Court finds that the parol evidence rule precludes consideration of Mr. Taylor's declaration that he "never intended" the Settlement Agreement to cover trade dress claims and that the trade dress claims were "specifically left out of the Settlement Agreement."

In sum, AFAB, as the moving party, has met its burden to present evidence that Pac-West's claims based on the RUSH, SUPER RUSH, and NEVER FAKE IT! trade dress are essentially the same as the Prior Counterclaims and, thus, were resolved by the Settlement Agreement. Pac-West,

as the non-moving party, has failed to point the Court to any evidence or lack of evidence in the record that establishes a genuine dispute of material fact, as it must, in order to overcome summary judgment. FRCP 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Therefore, the Court grants AFAB summary judgment on the trade dress claims as they relate to the RUSH, SUPER RUSH, and NEVER FAKE IT! marks.

AFAB has not, however presented such evidence for its other trade dress claims. Although AFAB seeks summary judgment on the "PWD" and "POWER PAK PELLET" trade dress, AFAB also does not explain how the RUSH photographs demonstrate that it did not change the trade dress related to the "PWD" and "POWER PARK PELLET" marks. *See* Doc. No. 66, at 24. Therefore, the Court denies summary judgment on the trade dress claims as to these other brands.

### IV. Labeling

Next, AFAB argues that there is no genuine dispute as to whether it has violated the labeling provision of the Settlement Agreement. Pac-West's Amended Complaint asserts that AFAB has violated the following Settlement Agreement provision:

> 2.3 AFAB will continue to identify the AFAB company name and "Bensalem, PA" on its packaging for any product offering that bear the RUSH, PWD, SUPER RUSH, POWER-PAK PELLET, or NEVER FAKE IT WITHOUT IT!, so that it is understood that these goods are being offered by AFAB (as opposed to an unrelated third party).

Doc. No. 22-1, § 2.3.

AFAB's labels use its fictitious corporate name, "I.C.E.," along with the Bensalem, PA location. AFAB argues that it registered I.C.E. as its fictitious corporate name in 2016 prior to the Settlement Agreement and that the name is a "legal company name AFAB can and does use." Doc. No. 66, at 34. Pac-West counters that the Settlement Agreement specifically provides that

AFAB must use "the AFAB company name . . . so that it is understood that these goods are being offered by AFAB." Doc. No. 74, at 17.[8]

The Court finds that the dispute over this inference—whether a consumer would understand that goods labeled "I.C.E." "are being offered by AFAB (as opposed to an unrelated third party)" under the terms of the Settlement Agreement—precludes summary judgment. *See Ideal Dairy Farms*, 90 F.3d at 744. Therefore, the Court denies summary judgment for AFAB on the labeling claims.

## V. Tortious Interference

Next, AFAB argues that summary judgment should be granted on Pac-West's tortious interference claims because there is no evidence to support this claim. In Counts Ten and Eleven of its Amended Complaint, Pac-West alleged that AFAB tortiously interfered with Pac-West's business and contractual relations by selling its unlabeled products at lower prices than Pac-West and "encouraging [third-party retailers] in creating counterfeit Pac-West products." Doc. No. 11 ¶¶ 140, 145.

As AFAB points out, the only evidence in the record of sales of its unlabeled bottles arises in the context of Pac-West's own distributor, Eugene Oregon, Inc., making such purchases without AFAB's knowledge but with Pac-West's "full knowledge and support." Doc. No. 66, at 36; Doc. No. 66-2, Ex. C, K. Krupa Dep. Tr. at 26:1–29:14; 49:3–53:12. Pac-West did not address the tortious interference claims in its briefing in opposition to summary judgment. At oral argument, AFAB argued that Pac-West conceded this argument and Pac-West again did not address the issue.

---

[8] Pac-West also argues that, even if use of a legal fictitious name met the labeling requirements of the Settlement Agreement, "[t]he fictitious name in Defendants' filing in the Commonwealth of Pennsylvania is 'I.C.E. Specialties,' not 'I.C.E.' or 'International Cosmetic Enterprises.'" Doc. No. 79 ¶ 11(b) (citing Doc. No. 14-1, Ex. I). However, Pac-West presents no case law regarding whether the relevant contract language requires, as a matter of law, the use of a full (as opposed to abbreviated) name.

15

Doc. No. 86, Oct. 12, 2021 Oral Arg. Tr. at 9:21–24. Thus, AFAB's motion for summary judgment on this issue is unopposed. Therefore, the Court grants summary judgment for AFAB on Counts Ten and Eleven of the Amended Complaint.

## VI. Unlawful Use

Finally, AFAB argues that Pac-West's claims are subject to the unlawful use defense because its products are unlawfully sold as "poppers." Pac-West retorts that AFAB and Mr. Farr cannot assert this defense under the doctrine of unclean hands, citing a news article about Mr. Farr entitled, "This Man Does Not Make Poppers," and arguing that AFAB violates 21 C.F.R. § 701.12(b), which requires labels of cosmetic products to state the "actual corporate name."

But neither party cites any courts in the Third Circuit that have adopted (or rejected) the unlawful use defense. *Cf. FN Herstal, S.A. v. Clyde Armory, Inc.*, No. 3:12-cv-102, 2015 WL 196208, at *9 (M.D. Ga. Jan. 8, 2015), (noting that only "[t]he Ninth, Tenth, and Federal Circuits have expressly adopted the unlawful use defense"). "Unlawful use in commerce is not among the enumerated defenses to trademark infringement set forth in 15 U.S.C. § 1115(b)." *Am. Ass'n of Motorcycle Inj. Laws., Inc. v. HP3 L., LLC*, No. 20-cv-4866, 2021 WL 3054799, at *4 (N.D. Ill. July 20, 2021). "While the unlawful use defense has long been recognized by the Trademark Trial and Appeal Board, it has not yet been widely adopted by the federal courts." *Dessert Beauty, Inc. v. Fox*, 617 F. Supp. 2d 185, 190 (S.D.N.Y. 2007), *aff'd*, 329 F. App'x 333 (2d Cir. 2009). Courts in the Third Circuit do not appear to have adopted the affirmative defense of unlawful use in trademark cases.

Pac-West also argues that AFAB does not satisfy, or even mention, the legal standard for an unlawful use defense. Indeed, AFAB repackages its standing arguments from the motion to dismiss stage, arguing that "[i]n the Third Circuit, in order to prove any form of Lanham Act

16

violation, the alleging party bears the burden to first demonstrate that . . . it has a valid and legally protectable mark." Doc. No. 66, at 36. This Court has already rejected AFAB's standing argument. *See* Doc. No. 40, Op. at 14–15. Further, AFAB's unlawful use defense simply duplicates its amended counterclaim for no lawful use in commerce, which survives Pac-West's motion to dismiss as to the portions that are not precluded by the dismissal of the Prior Litigation with prejudice.

Therefore, the Court will deny AFAB's motion for summary judgment on its unlawful use defense.

## CONCLUSION

For the foregoing reasons, the Court grants AFAB's motion for summary judgment in part and denies the motion in part. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE