## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AFAB INDUS. SERV., INC, | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| PAC-WEST DISTRIB. NV LLC, *et al.,* | : | **No. 19-0566** |
| *Defendants* | : | |

| | | |
|---|---|---|
| PAC-WEST DISTRIBUTING NV LLC, | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| AFAB INDUSTRIAL SERVICES, INC., | : | |
| et al., | : | **No. 19-3584** |
| *Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                           OCTOBER 23rd, 2023

The parties in these two actions each sell chemical compounds labeled and marketed for cleaning and cosmetic uses. They previously litigated the use of certain trademarks and trade dress, resolving their dispute through a 2016 settlement agreement. Then, in 2019, the parties each brought new actions against one another, alleging various claims and counterclaims of trademark and trade dress infringement, breach of contract, false advertising, and unfair competition. Pac-West demanded jury trials in both suits. AFAB initially demanded a jury trial on its claims in the action it initiated (Civ. No. 19-0566). Now, nearly four years later, AFAB has moved to strike these jury demands and proceed with a bench trial on all claims, arguing that each form of relief Pac-West seeks is strictly equitable. In reply, Pac-West argues that several of its claims are legal in nature and thus has a right under the Seventh Amendment to have them—and any facts common to those claims and its equitable claims—heard by a jury. Though Pac-West seeks both equitable

and legal relief, the inclusion of the former does not subsume the Seventh Amendment right to a trial by jury for the latter. Therefore, the Court denies AFAB's motion to strike.

## BACKGROUND

The Court writes for the benefit of the parties and assumes basic familiarity with the facts of this dispute. *See Pac-West Distrib. NV LLC v. AFAB Indus. Servs., Inc.*, No. 19-cv-3584, 2020 WL 4470447, at *1–*2 (E.D. Pa. Aug. 4, 2020).

## LEGAL STANDARD

The Federal Rules of Civil Procedure permit a civil litigant to demand a jury trial on any claims or issues for which the Seventh Amendment confers a right to a jury trial. Fed. R. Civ. P. 38(a). The Seventh Amendment right has been interpreted to attach only to suits asserting legal claims, as opposed to claims sounding in equity. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989) (citing *Parsons v. Bedford*, 3 Pet. 433, 447 (1830)). If an action asserts both legal and equitable claims, the Seventh Amendment jury right may attach to all legal claims on an issue-by-issue basis. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473 (1962) (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959)). And where legal and equitable claims raise common questions of fact, those questions ought first be decided by a jury before a court may rule on the equitable claims. *See Beacon Theatres*, 359 U.S. at 510-11.

In deciding a motion to strike a jury demand, the Court's task is a narrow one. Such is it here. The Court must review each of the pending claims, the relief sought for each, and determine which are legal in nature and which are not. When an earlier court ruling has dismissed a legal claim or foreclosed the availability of a remedy at law, the Seventh Amendment jury right may no longer attach to that claim. *See, e.g., AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 222 (3d Cir. 2009) (holding that a district court "may strike a jury demand without offending the Seventh Amendment" when "a party cannot tender evidence essential to its only legal claim");

*AstraZeneca LP v. Tap Pharm. Prods., Inc.*, 444 F. Supp. 2d 278, 288 (D. Del. 2006) (Jordan, J.). But a motion to strike a jury demand is not itself an appropriate avenue for a party to attack the legal sufficiency of a claim or the evidence presented in support thereof; those matters must be resolved via a motion to dismiss or a motion for summary judgment. *See, e.g., Libbey Glass, Inc. v. Oneida Ltd*, No. 98-cv-439, 1999 WL 684180, at *3 (N.D. Ohio July 12, 1999).

### HISTORY AND PURPOSE OF THE SEVENTH AMENDMENT

The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. Const. amend. VII. However, "the common-law forms of action recognized in 1791" are not the only actions covered by the Seventh Amendment. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990). Instead, "'[s]uits at common law' refers to 'suits in which *legal* rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered.'" *Id.* (quoting *Parsons v. Bedford*, 3 Pet. 433, 447 (1830)). And "[t]he right extends to causes of action created by Congress." *Id.* at 564-65. "Whether the right to a jury trial applies depends upon 'the nature of the issue . . . rather than the character of the overall action.'" *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013) (quoting *Ross v. Bernhard*, 396 U.S. 531, 538 (1970)).

To determine whether a claim is equitable or legal, a court must (1) "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity" and (2) "examine the remedy sought and determine whether it is legal or equitable in nature." *Granfinanciera*, 492 U.S. at 42 (quoting *Tull v. United States*, 481 U.S. 412, 417-18 (1987)). "The second stage of this analysis is more important than the first," and "[i]f, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, [the

court] must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury a factfinder." *Id.*

For almost one hundred years, the Supreme Court has reiterated that "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Chauffers*, 494 U.S. at 565 (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)). Even in England before the founding of the United States, William Blackstone wrote that the jury was "the glory of the English law" and "the best criterion, for investigating the truth of facts, that was ever established in any country." Darrell A.H. Miller, *Text, History and Tradition: What the Seventh Amendment Can Teach Us About the Second*, 122 Yale L.J. 852, 873 (Jan. 2013) (quoting 3 William Blackstone, Commentaries *379, *385). And in the nascent days of the American Republic, Thomas Jefferson wrote in 1789 that he regarded "trial by jury as the only anchor ever yet imagined by man, by which a government can be held to the principles of its constitution." *Id.* at 874 (quoting Letter from Thomas Jefferson to Thomas Paine, 1789, in 7 The Writings of Thomas Jefferson 408 (Albert Ellergy Bergh ed., 1905)).

But as noted above, the right to a jury trial in a civil matter is not absolute and requires a two-factor test to determine its applicability to the case at hand, first evaluating whether the current action is comparable to a legal action or equitable action then available in 18th-century England. That is because, according to Justice Story, the common law of England was "the grand reservoir of all our jurisprudence." *United States v. Wonson*, 28 F. Cas. 745, 750 (C.C.D. Mass. 1812) (No. 16,750). At the same time, as Justice Story later wrote for the Court, the Seventh Amendment right was not restricted "to only those causes of action that existed in 1791." Miller, *supra*, at 879 (citing *Parsons*, 3 Pet. at 447). In sum, the Seventh Amendment protects the right to a jury trial in civil

4

cases where the action could have been brought in a legal court in 18th-century England or resembles such an action. But if an action includes claims seeking both legal and equitable relief, the inclusion of equitable actions does not necessarily subsume the Seventh Amendment right. *Dairy Queen*, 369 at 473.

## DISCUSSION[1]

AFAB contends that Pac-West's jury demand must be stricken because each of its claims is either equitable in nature or, if legal, would fail as a matter of law. The Court considers each of AFAB's arguments in turn.

### I.   Actual Damages – Royalties

Counts I and II of Pac-West's amended complaint seek, *inter alia*, actual money damages against AFAB for trade dress and trademark infringement under the Lanham Act. The Seventh Amendment jury right attaches to claims for actual damages in trademark infringement cases. *See, e.g., B&B Hardware, Inc. v. Hargis Indus. Inc.*, 575 U.S. 138, 150 (2015); *Dairy Queen*, 369 U.S. at 477, 479-80. A plaintiff may establish actual damages in a trademark suit under several theories.

---

[1]    As a threshold issue, Pac-West argues that AFAB's motion to strike should be denied based on the equitable doctrine of laches because AFAB, despite initially making a jury demand and repeatedly representing that it intended to proceed with a jury trial, waited over three years before moving to strike the jury demand on the "eve of trial." To prevail on a laches argument, Pac-West must demonstrate both (1) "inexcusable delay" and (2) prejudice as a result of that delay. *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 226 (3d Cir. 2007). Pac-West has demonstrated some prejudice in the form of expenses incurred in preparation for a jury trial and the inconvenience of shifting gears to a bench trial at the last minute. *Cf. United States v. 79.36 Acres of Land*, 951 F.2d 364 (Table), at *2 (9th Cir. 1991) (holding that the government's "delay in objecting to defendant's demand for jury trial until the very eve of trial" was "inexcusable" because "[t]he defendant had prepared its case to the presented to a jury" and "organized its trial strategy contemplating that the case would be tried to a jury rather than to a judge").

But Pac-West did not show inexcusable delay because (1) the trial date has not yet been set, so a trial is not actually imminent where the instant Motion would be an eleventh-hour surprise; and (2) under Rule 39(a), "a party may file a motion to strike a jury demand at any time[,]" "even on the eve of trial." *See Tracinda*, 502 F.3d at 226-27; *see also Allscripts Healthcare, LLC v. Andor Health, LLC*, No. 21-cv-704, 2022 WL 3017364, at *9 (D. Del. July 29, 2022); *Engines, Inc. v. MAN Engines & Components, Inc.*, No. 10-cv-277, 2012 WL 589558, at *2 (D.N.J. Feb. 22, 2012). Thus, Pac-West's laches argument fails, and the Court will look to the merits of AFAB's motion.

One method is to show that the parties had or contemplated a royalty agreement for the use of the marks at issue, and then to use those royalty rates to calculate actual damages. *See, e.g., A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208-09 (3d Cir. 1999) ("[W]hen the courts have awarded a royalty for past trademark infringement, it was most often for continued use of a product beyond authorization, and damages were measured by the license the parties had or contemplated.").

Here, Pac-West asserts that its predecessor-in-interest had such a licensing agreement with AFAB, under which AFAB purportedly agreed to pay certain royalty rates for the use of certain trademarks at issue in this case. According to Pac-West, AFAB paid royalties under this agreement for approximately two years before the agreement was terminated. Such an agreement, if it exists, may be used to assess actual damages. *See, e.g., Days Inn Worldwide, Inc. v. Mayu & Roshan, LLC*, No. 06-cv-1581, 2007 WL 1674485, at *7 (D.N.J. June 8, 2007).

In response, AFAB does not contest the notion that a valid royalty agreement may be used to assess actual damages, or that those damages would be legal in nature, with the Seventh Amendment jury right attaching. Instead, AFAB argues that Pac-West cannot prove any actual damages because the purported agreement was, among other things, unsigned. That argument, however, is properly addressed in a motion for summary judgment, not a motion to strike a jury demand.[2] *See Libbey Glass,* 1999 WL 684180, at *3. The only issue properly before the Court is

---

[2]   AFAB makes two arguments that arguably go to the amount of royalty damages, rather than the sufficiency of Pac-West's claims. First, AFAB argues—based on its position that Pac-West lacks evidence of a royalty agreement—that Pac-West may only show actual damages by establishing a hypothetical negotiated royalty rate. AFAB then directs the Court's attention to a patent case, *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, in which the court listed expert testimony as one of fifteen factors that could be relevant to determining a reasonable royalty rate under a hypothetical negotiation. *See* 318 F. Supp. 1116, 1120 (S.D.N.Y.). That case, however, held only that expert testimony was relevant, not that it was necessary. *See id; see also* 35 U.S.C. § 284 (providing that, in patent cases, "[t]he court *may* receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances."). Moreover, to the extent that Pac-West offers evidence of an agreement in the form of a purported agreement and witness testimony, there is no need to consider a hypothetical negotiated royalty.

whether the Seventh Amendment jury right attaches to Pac-West's claim for actual damages based on a purported licensing agreement. The Court finds that it does.

## II.    Statutory Damages – Trademark Counterfeiting

Pac-West also seeks statutory damages for trademark counterfeiting under 15 U.S.C. § 1114(1). These statutory damages are legal, not equitable. *See, e.g., Microsoft Corp. v. Master Computer, Inc.*, No. 04-cv-2567, 2005 WL 2562290, at *7 (M.D. Pa. Oct. 12, 2005) (holding that a jury would determine the amount of statutory damages). Once again, AFAB does not argue that statutory damages under the Lanham Act are not legal in nature. Instead, it raises a bevy of arguments regarding why Pac-West's counterfeiting claim should fail on the merits. As stated above, however, a motion to strike a jury demand is not the appropriate avenue for resolving the merits of a claim. It suffices for purposes of the Seventh Amendment and Rule 39 that Pac-West's claim for statutory damages is legal in nature and the jury demand is appropriate.

## III.    Compensatory and Punitive Damages – Common Law Trademark and Contract Claims

Pac-West also seeks compensatory and punitive damages for its common law trademark infringement, unfair competition, unjust enrichment, and breach of contract claims. Compensatory and punitive damages are textbook legal remedies. *Protos v. Volkswagen of Am., Inc.*, 797 F.2d 129, 138 (3d Cir. 1986). AFAB's efforts to argue the merits of these respective claims does not alter this fact and does not provide a basis on which to strike Pac-West's jury demand.

---

Second, AFAB contends that the Court should look to the parties' 2016 settlement agreement, in which Pac-West agreed to permit AFAB to use five of its trademarks for no royalty, to conclude that the only reasonable royalty for use of the marks at issue in this case would be zero dollars. As previously discussed, however, a motion to strike a jury demand is not the appropriate avenue to resolve this issue.

## IV.   Accounting of Profits

Pac-West also seeks to recover AFAB's profits from its alleged infringement and counterfeiting under the Lanham Act. AFAB asserts that an accounting of profits—more commonly known as disgorgement—is a strictly equitable remedy.

On one level, this is a thorny question without a clear answer, especially if the claim for disgorgement were the only claim to be addressed. *See, e.g.*, Mark A. Thurmon, *Ending the Seventh Amendment Confusion: A Critical Analysis of the Right to a Jury Trial in Trademark Cases*, 11 Tex. Intell. Prop. L.J. 1, 3 (2002) (describing the issue as one "clothed in uncertainty"). In *Dairy Queen, Inc. v. Wood*, the Supreme Court held that whether a claim was legal or equitable depended on its nature, not its label, no matter whether the complaint sought "damages" or an "accounting" of profits. 369 U.S. 469, 477-78 (1962). There, the Court also held that Dairy Queen's demand for an accounting was "legal" in nature because it could be construed as damages for the trademark infringement. *Id.* at 476-77.

After *Dairy Queen*, courts have taken divergent approaches to decide the issue in trademark cases. Most courts have interpreted *Dairy Queen* for the proposition that a claim for profits in a trademark case is legal in nature. Thurmon, *supra*, at 4. The Court of Appeals for the Third Circuit seemingly took this approach in a *patent* case in *Kennedy v. Lakso*, 414 F.2d 1249 (3d Cir. 1969). There, the Third Circuit Court of Appeals held that where a plaintiff sought injunctive relief, damages, and profits, there was no reason to distinguish between "damages" and "profits" for purposes of the Seventh Amendment jury right. *See* 414 F.2d 1249, 1253-54 (3d Cir. 1969). The court first held that *Dairy Queen* and other Supreme Court precedent stood for the proposition that "where there are issues which ordinarily would be triable at law before a jury the right to jury trial is not lost because equitable relief also is sought." *Id.* at 1253. The court then held that "[i]t follows that no distinction can be drawn which would justify recognition of the right to jury trial for

8

'damages' and its denial in a claim for 'profits' on the theory that 'damages' are recoverable in an action at law whereas 'profits' have their origin in equitable principles which hold the infringer a trust for the patent holder." *Id.* The plaintiff in *Lakso* was entitled to have a jury decide the factual issue because there was "nothing on the present record to indicate that the accounting between the parties in determination of profits or damages will be so complicated as to be beyond the power of a jury to determine." *Id.* at 1254. In other words, the Court of Appeals for the Third Circuit analyzed whether the accounting of profits would be so complicated such that it would require equitable relief from the Court, and if that analysis determined instead that the profits were essentially in the form of monetary damages, then the relief would be legal in nature.

In *American Cyanamid Co. v. Sterling Drug, Inc.*, the court found that no jury trial right attached where a plaintiff expressly waived its claim to damages, seeking only injunctive relief and defendant's profits. *See* 649 F. Supp. 784, 787-89 (D.N.J. 1986). Courts in this district have often cited *Cyanamid* for the proposition that, absent a claim for damages, a claim for disgorgement of profits is purely equitable. *See, e.g., Vulcan Print Media, Inc. v. Las Vegas Sports News, LLC*, No. 98-cv-5768, 2001 WL 35974201, at *1 (E.D. Pa. Nov. 20, 2001); *Dastgheib v. Genentech, Inc.*, 457 F. Supp. 2d 536, 546 n.13 (E.D. Pa. 2006). At the same time, other courts in this district have held that "[d]isgorgement of profits is an equitable remedy available in a federal trademark case." *Lontex Corp. v. Nike, Inc.*, No. 18-5623, 2022 WL 622321, at *3 (E.D. Pa. Mar. 3, 2022). But such courts have also permitted juries to decide those issues. *See id.* at *6 ("Although the Court rejects [Plaintiff's] request for disgorgement, it does so because the jury has already spoken on that issue."). Other courts have instead held "that a jury right may exist depending on the theory of profits; where profits are a proxy for damages, a jury right exists, but where profits are premised on unjust enrichment, a jury right does not exist." *Black & Decker Corp. v. Positec*

*USA Inc.*, 118 F. Supp. 3d 1056, 1062 (N.D. Ill. 2015) (citing, *inter alia*, *Cyanamid*, 649 F. Supp. at 789).

Here, Pac-West seeks an amount equal to AFAB's alleged profits generated from infringing on Pac-West's trademarks. Although Pac-West characterizes this as damages in its opposition to AFAB's Motion, it omits such language in its Complaint. However, Pac-West argues that the accounting for the profits can be reasonably calculated because the process merely requires adding AFAB's revenues, and these profits are effectively damages Pac-West seeks from AFAB's alleged infringement.

One could argue that disgorgement is legal in nature in this case because, as in *Dairy Queen*, Pac-West may have described its relief sought as "Defendants' profits[,]" but the relief Pac-West arguably seeks are damages resulting from AFAB's alleged infringement in the form of profits. At the same time, the Court is mindful that some courts of appeals have taken a different approach and have determined that "an accounting of profits has traditionally been viewed as an equitable remedy." *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 471 (6th Cir. 2022) (citing J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:61 (5th ed.)).

Nevertheless, the Court need not make that determination in this case. Even if disgorgement here were equitable rather than legal relief, the "long-standing principle of equity dictates that only under the most imperative circumstances . . . can the right to a jury trial of legal issues be lost through prior determination of equitable claims." *Beacon Theatres* 359 U.S. at 510-11. In other words, "the Supreme Court has given far-reaching recognition and encouragement to the right of jury trial . . . ." *Lakso*, 414 F.2d at 1252. Because the Court finds that many of Pac-West's other claims are legal in nature and that there are no imperative circumstances dictating

otherwise, Pac-West's right to a jury trial under the Seventh Amendment does not yield to a potential claim for equitable relief.

## V.   Attorneys' Fees

AFAB contends that an award of attorneys' fees under the Lanham Act is a strictly equitable remedy. That is true for Section 35(a) of the Lanham Act, which permits a court to "award reasonable attorney fees to the prevailing party" in exceptional trademark cases. 15 U.S.C. § 1117(a). The Court of Appeals for the Third Circuit, examining the legislative history of this section, has held that an award of attorneys' fees *under that section* is an equitable remedy. *See Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 280-81 (3d Cir. 2000).

Here, Pac-West seeks attorneys' fees for its trademark claims, which would be treated as an equitable remedy. Pac-West also arguably seeks attorneys' fees for its claim that AFAB breached the covenant not to sue found in the parties' 2016 settlement agreement.[3] Some courts have found that attorneys' fees represent actual damages for breach of contract. *See, e.g., Appel v. Kaufman*, No. 08-cv-392, 2011 WL 13377541, at *1 (E.D. Pa. Jan. 5, 2011) ("The breach of a covenant not to sue may be grounds for an action for damages."). However, "other courts have drawn a distinction between attorneys' fees that a court might award 'after the trial *on the basis of the judgment entered at the trial*' and attorneys' fees that accrued in a '*separate, underlying action against a third party*.'" *Avco Corp. v. Turner*, No. 2:20-cv-04073-JDW, 2021 WL 1721577, at *2 (E.D. Pa. Apr. 30, 2021) (emphasis added).

---

[3]    In responding to the instant Motion, Pac-West argues that the attorneys' fees are damages for AFAB's alleged breach of a covenant not to sue. However, nowhere in Pac-West's amended complaint does Pac-West aver that it is seeking such compensation and instead avers in its claim for breach of *contract*, "damages in an amount to be determined at trial in lost sales and business opportunities from customers that Defendants confused or deceived and in resources and lost opportunities spent defendant [sic] against Defendants' frivolous and unlawful litigation."

The Court agrees with the latter approach because "[a] rule that requires a party seeking attorneys' fees to present its fees to the jury creates a host of problems in discovery and at trial." *Id.* The attorneys' fees here, even if as damages for the breach of covenant not to sue, would stem from the instant action. Pac-West did not bring a separate action against AFAB or a third party in which it paid attorneys' fees to pursue *separate* litigation. In other words, the attorneys' fees in this case would be no different from those accrued in pursuing the Lanham Act claims, resulting in an equitable remedy. And having this decided by the jury would create a host of problems for the jury, such as "forc[ing] the jury to evaluate the reasonableness of the claimant's legal strategy." *Id.* Thus, attorneys' fees Pac-West seeks are equitable, not legal, in nature. This issue will not be presented to the jury.

### VI.   Pac-West Seeking Injunctive Relief Does Not Bar Its Right to a Jury Trial

Though Pac-West also seeks equitable relief, this does not bar its right to a jury trial. Where there are both legal and equitable claims in a single case, a jury must be empaneled to decide any common questions of fact, and the Court may treat its verdict on equitable claims as advisory. *See Beacon Theatres*, 359 U.S. at 510-11.

However, the Court of Appeals for the Third Circuit recently held in an ERISA case that "in a suit with equitable and legal claims and facts common to both, a district court must determine whether the jury verdict on the legal claims necessarily implies the resolution of any common factual issues, even when the jury fails to make explicit findings of fact." *Kairys v. S. Pines Trucking, Inc.*, 75 F.4th 153, 161 (3d Cir. 2023) (cleaned up). "The court then 'must follow the jury's implicit or explicit factual determinations in deciding the equitable claims.'" *Id.* (quoting *Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016)). But "the trial court retains full discretion to diverge from an advisory jury verdict (or to reach a result without the help of an advisory jury),

so long as the factual findings underlying its contrary conclusion are consistent with those explicitly or implicitly found by the jury on the claims for which the jury sat as factfinder." *Id.*

Here, there are several factual questions that are common to nearly all of the claims at issue. For example, to obtain damages, profits, and/or an injunction, Pac-West must show evidence of consumer confusion under both state and federal law. The same is true of all the claims related to the contract, such as the royalties, covenant not to sue, and disparagement claims.

To preserve the Seventh Amendment right on the legal claims, the Court must let a jury decide those facts before it evaluates any of the equitable claims. *See Dairy Queen*, 369 U.S. at 479. Even if few of Pac-West's claims are, or may be, equitable in nature, Pac-West still has a right to a jury trial to address and decide common factual questions, and that right does not yield under the circumstances of this case. At the conclusion of trial, the Court may then treat the jury's verdict on the equitable claims as advisory as long as the Court's decision is consistent with those facts decided by the jury. *See Kairys*, 75 F.4th at 161. Thus, the jury can hear both the legal and equitable claims, other than the attorneys' fees claims, and the Court will then treat the jury's decision on the equitable claims as advisory.

## CONCLUSION

For the foregoing reasons, the Court denies AFAB's Motion to Strike Pac-West's Jury Demand.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE